**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 32237**

| | |
|---|---|
| DUANE WATSON, | ) |
|  | ) |
| Plaintiff-Appellant, | ) **Lewiston, April 2007 Term** |
|  | ) |
| v. | ) **2007 Opinion No. 64** |
|  | ) |
| DAVID WATSON, | ) **Filed: April 27, 2007** |
|  | ) |
| Defendant-Respondent. | ) **Stephen W. Kenyon, Clerk** |
|  | ) |

Appeal from the District Court of the Second Judicial District of the State of Idaho, for the County of Clearwater. Hon. Carl B. Kerrick, District Judge.

Judgments entered by the district court are <u>affirmed.</u>

Clinton J. Henderson, Clarkston, Washington, for appellant.

Randall, Blake & Cox, Lewiston, for respondent. Scott Chapman argued.

_____

JONES, Justice

Duane Watson sued his brother, David, seeking specific performance of an alleged oral agreement to purchase David's share of real property that they owned as tenants in common. David counterclaimed for a partition of the property and an accounting of money received for logging done on the property. The district court denied specific performance and partition but did order an accounting. After the accounting was completed and the district court entered judgment, Duane appealed. We affirm.

**I.**

In 1994 David and Duane purchased 114 acres overlooking Dworshak Reservoir in Clearwater County. The brothers acquired the property as tenants in common to use as a family retreat and to supplement their incomes through selective logging. David and Duane soon disagreed over how the property should be logged and after 1994 David quit

1

participating in any logging activities. Duane intermittently logged the property with some associates thereafter.

The purported oral agreement in this case originated in 1996, and revolves around the sale of David's interest in the property to Duane. The parties do not dispute that David agreed to sell his interest to Duane for $45,000 or that Duane agreed to forgive David's preexisting debt of $15,000 as a down payment. The brothers disagree whether David was to receive 5 acres of the property and whether the agreement included what the parties describe as "peripherals," namely a rubber skidder, a six-wheel Polaris, a hunting rifle, firewood and fence posts. David contended that the deal included these items of personal property for which Duane was to pay an additional $5,600. Between 1996 and 1999, Duane issued six checks to David, each containing a notation such as "land payment" or "Dworshak place payment." David endorsed and deposited the checks, which totaled $24,000.

On September 2, 1999, Duane mailed a letter to David restating his understanding that he was purchasing David's share of the property, stating that he intended to tender a final payment of $6,000 on September 15, and asking that David sign a quitclaim deed to complete the transaction. David responded that he would not comply because Duane did not mention the peripherals and the 5 acres that he alleged were part of the agreement. Duane replied in an undated letter that he would pay the additional $5,600 for the peripherals to finalize the transaction but that he did not have the money to pay at that time. He made no mention of the 5 acres. David wrote back in December 1999 saying Duane needed to have his attorney prepare a description of the 5-acre parcel and requesting an "I.O.U." for $6,000 because Duane's lawyer only had $5,600 in his trust account at the time.

The record contains three additional pieces of correspondence between the brothers. David sent a letter, dated September 16, 2000, stating that he wanted to divide the property and that he would attempt to obtain his share of any timber sales that Duane had made. Duane's attorney sent a letter on September 29, 2000, stating that Duane had $11,500 as full and final payment for the property and enclosing a copy of an agreement, signed by Duane, in which he agreed to convey "all property lying South East of the County road of the property described in Exhibit A consisting of five (5) acres or more."

2

Exhibit A is not included in the record. On October 8, 2000, David mailed a letter to Duane stating that he would accept the $11,500 as payment for the timber but that he wanted 57 acres – half of the acreage that they owned in common.

Duane sued in 2001, seeking specific performance of the oral agreement. In a separate action later consolidated with Duane's lawsuit, David sought a partition of the property and an accounting of the logging receipts. After a bench trial the district court found that Duane failed to prove by clear and convincing evidence that an oral agreement was made between the brothers in 1996. The district court also concluded that the parties' correspondence in 1999 did not constitute a contract because Duane did not refer to the 5-acre parcel in his undated reply. Additionally, the property to be conveyed to David was not specifically described anywhere in their correspondence. Because the parties did not agree on all the contractual terms, specific performance was inappropriate. The district court also declined to award an equitable partition but did grant David's request for an accounting.

The district court entered judgment on September 26, 2003, requiring that Duane provide an accounting of the logging and stating that both parties owned the property as tenants in common ("2003 judgment"). Between 2003 and 2005, the parties participated in several hearings regarding the accounting. On July 22, 2005, the district court entered a judgment for David in the amount of $8,299.25 ("2005 judgment"). The district court arrived at the figure based on Duane's federal tax returns, stating that David was entitled to half of Duane's gross receipts. The district court did not factor in the expense deductions that Duane took but did allow a 50% deduction for expenses based on testimony by Duane's accountant. The court added property taxes that David paid on the property and subtracted $24,000 for the checks that David deposited and $15,000 for forgiveness of the preexisting debt. Duane filed a notice of appeal on August 17, 2005, stating that he was appealing the 2005 judgment.

## II.

In this opinion, we address four issues: 1) whether Duane brought a timely appeal of the district court's 2003 judgment; 2) whether the district court relied on substantial and competent evidence in denying specific performance; 3) whether the district court

3

relied on substantial and competent evidence in the accounting; and 4) whether David is entitled to attorney fees on appeal.

## A.

After a bench trial our review of the district court's decision "is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Benninger v. Derifield*, 142 Idaho 486, 488, 129 P.3d 1235, 1237 (2006). The district court's factual findings are "liberally construed on appeal in favor of the judgment entered, in view of the trial court's role as trier of fact." *Id.* at 489, 129 P.3d at 1238. On appeal, we will not set aside the district court's factual findings if supported by substantial and competent, albeit conflicting, evidence. *Indep. Lead Mines Co. v. Hecla Mining Co.*, 143 Idaho 22, 26, 137 P.3d 409, 413 (2006). When the issue is one of law, we exercise free review and may draw our own conclusions from the facts presented. *Id.*

## B.

David argues that Duane failed to file a timely appeal of the 2003 judgment so this Court should decline to address the issues arising from that judgment. Because the timely filing of a notice of appeal is jurisdictional, this Court will dismiss the appeal for lack of jurisdiction if Duane did not timely file a notice of appeal. *In re Universe Life Ins. Co.*, ___ Idaho ___, ___ P.3d ___, 2007 WL 914049 (Mar. 28, 2007). We will determine if the district court's 2003 judgment can be appealed "by its content and substance, and not by its title." *Camp v. E. Fork Ditch Co., Ltd.*, 137 Idaho 850, 867, 55 P.3d 304, 321 (2002). As a general rule, a final judgment is an order or judgment that ends the lawsuit, adjudicates the subject matter of the controversy, and represents a final determination of the parties' rights. *Id.*

Here, the 2003 judgment did not end the lawsuit and was not a final determination of the parties' rights. While the district court found that the brothers owned the property as tenants in common and ordered Duane to render an accounting, an accounting still needed to be completed. The district court could not determine what right, if any, David had to the logging revenues generated from the property until after the accounting was completed. The 2003 judgment is best characterized as an interlocutory judgment, which requires a certificate issued pursuant to I.R.C.P. 54(b) in order to be appealable to this

Court. The parties never sought, and the district court never issued, such a certificate. Thus, when Duane appealed the 2005 judgment, the 2003 judgment was deemed included in that appeal. Idaho App. R. 17(e)(1)(A).

## C.

Oral contracts for the sale of land are invalid under Idaho's Statute of Frauds. I.C. § 9-503. However, the doctrine of part performance is a well-established exception to the strict application of the Statute of Frauds. In *Bear Island Water Ass'n., Inc. v. Brown*, 125 Idaho 717, 722, 874 P.2d 528, 533 (1994), we explained:

> Under the doctrine of part performance, when an agreement to convey real property fails to meet the requirements of the statute of frauds – as in this case where the alleged agreement was not reduced to writing – the agreement may nevertheless be specifically enforced when the purchaser has partly performed the agreement. Before an oral agreement to convey land will be specifically enforced, the underlying contract must be proven by clear and convincing evidence. Further, the proof must show that the contract is complete, definite and certain in all its material terms, or that it contains provisions which were capable in themselves of being reduced to certainty. The material terms which must be identified in a contract to convey land include the parties to the contract, the subject matter of the contract, the price or consideration, and a description of the property.

(internal citations omitted). There is no legal right to specific performance so the district court employs its discretion to make such an award after balancing the equities between the parties. *Kessler v. Tortoise Dev., Inc.*, 134 Idaho 264, 270, 1 P.3d 292, 298 (2000).

Our review here is limited to ascertaining whether the evidence supports the district court's factual findings. *Indep. Lead Mines*, 143 Idaho at 26, 137 P.3d at 413. When the evidence conflicts but is substantial and competent, we will defer to the district court in view of its role in weighing conflicting evidence and judging witness credibility. *Id.* Both parties testified as to what their respective understandings of the agreement were. Duane testified the agreement dealt only with his purchase of David's interest in the entire 114-acre parcel. On the other hand, David testified that he understood the agreement to exclude the 5-acre parcel and to include certain personal property. This disagreement, as to whether the 5 acres was included or excluded, caused the district court to conclude that the parties had failed to reach a meeting of the minds regarding the description of the property to be conveyed. The court noted that this disagreement

5

continued until the deal fell apart in 1999. Thus, the court determined, after weighing the conflicting evidence and judging the Watsons' credibility, that a material term of the alleged contract, a reasonably clear description of the property, was not proven by Duane.

Duane asserts that the 6 checks he issued to David starting in 1996, which were endorsed and deposited by David, constituted written proof of the contract. However, those checks could have been for David's interest in the full 114 acres or they could have been for David's interest in 109 acres, less the 5 acres David claimed. The district court did not find this to be persuasive because the checks did not indicate exactly what property was implicated.

Without agreement regarding the 5-acre parcel, there could be no reasonably clear property description and, therefore, no underlying contract to be specifically performed. Specific performance cannot be granted where the purported oral contract was uncertain as to whether David was selling his entire interest in the 114 acres or whether he was obtaining Duane's interest in about 5 acres and selling his interest in the rest of the parcel. In a very similar case, this Court declined to enforce a written agreement for the sale of a 95-acre parcel of real property, holding that the legal description was insufficient where it did not describe an approximate 5-acre parcel that was to be excluded from the sale. *Lexington Heights Dev. LLC v. Crandlemire*, 140 Idaho 276, 282, 92 P.3d 526, 532 (2004). Because there was no underlying contract, we need not consider whether the parties' disagreement over the personal property would result in denial of specific performance. We also need not consider whether Duane partially performed so as to be entitled to specific performance. Because Duane did not prove the underlying contract by clear and convincing evidence, we affirm the district court.

**D.**

Duane also argues that the district court erred in not accepting the expenses deducted from the gross timber receipts as shown on his tax returns. Duane asserts that his accountant validated the deductions shown on the returns and that it was improper to use the returns as proof of his income but not of his expenses. The party called upon to render an accounting bears the burdens of production and persuasion. *Dunn v. Baugh*, 95 Idaho 236, 238, 506 P.2d 463, 465 (1973). The district court accepted Duane's tax returns as evidence of his gross receipts from logging between 1996 and 1999. The

6

district court compared Duane's calculation of $184,197 to David's estimate of $171,817.75 (a difference of $12,379.25), which he derived from Idaho Department of Lands records. The district court did not accept the expense deductions on the returns because Duane did not produce evidence that the expenses were necessarily incurred in the logging. As the party required to render an accounting, Duane was required to establish that the expenses pertained to the logging and were not general business costs. Duane's tax returns do not establish by themselves that the expenses claimed were necessary for the logging. Duane did not provide any additional evidence to support his contention that he incurred the expenses for the logging. Although the court determined that Duane failed to carry his burden of proof with regard to the expenses claimed on the tax returns, it did allow a 50% deduction from the gross receipts based on testimony submitted by Duane's accountant that "a cost of 50% to produce income is normal" for such logging operations. Accordingly, we hold that the district court did not err in its judgment on the accounting.

**E.**

David requests attorney fees on appeal pursuant to Idaho Code § 12-120(3), which provides that the prevailing party shall recover attorney fees in a civil action to recover on a commercial transaction. Attorney fees are appropriate under Idaho Code § 12-120(3) where the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover. *Iron Eagle Development, LLC v. Quality Design Systems, Inc.*, 138 Idaho 487, 493, 65 P.3d 509, 515 (2003). A commercial transaction is the gravamen of this case because the parties purchased the property in large part for purposes of logging it and the district court was called upon to apportion the logging proceeds. Thus, we award reasonable attorney fees on appeal to David.

**III.**

We affirm the judgments entered by the district court and award reasonable attorney fees to David on appeal, as well as costs.

Chief Justice SCHROEDER, and Justices TROUT, EISMANN and BURDICK CONCUR.

7