# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34697

| | |
|---|---|
| AMERICAN PENSION SERVICES, INC.; DREW DOWNS; CURTIS DEYOUNG; HARRY SEGURA; DEAN DEYOUNG; and E. DALE HENDERSON,<br><br>    Plaintiffs/Respondents,<br><br>v.<br><br>CORNERSTONE HOME BUILDERS, LLC, a Utah Limited Liability Company; and CORNERSTONE HOME BUILDERS, LLC, an Idaho Limited Liability Company,<br><br>    Defendants/Appellants. | Boise, May 2009 Term<br><br>2009 Opinion No. 98<br><br>Filed: July 15, 2009<br><br>Stephen W. Kenyon |

Appeal from the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Richard T. St. Clair, District Judge.

The decision of the district court is affirmed.

Dunn Law Offices, PLLC, Rigby, for appellant. Robin Dunn argued.

Racine, Olson, Nye, Budge & Bailey, Chtd., Pocatello, for respondent. Stephen Muhonen argued.

W. JONES, Justice

This appeal arises from a breach of contract claim filed by American Pension Services, Inc. (APS) against Cornerstone Home Builders, LLC (Cornerstone). The district court found in favor of APS and Cornerstone appeals that decision to this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

APS filed the initial complaint on January 10, 2006 against Cornerstone for breach of contract, fraud, specific performance, unjust enrichment/rescission, and requested attorney's fees. APS filed an amended complaint on October 5, 2006 adding claims for breach of express

1

contract, breach of implied in fact contract, and breach of covenant of good faith and fair dealing.

APS is a Utah Corporation which administers employee retirement accounts and self-directed Individual Retirement Accounts (IRA). APS controlled the retirement funds of Drew Downs, Dale Henderson, Dean DeYoung, Harry Segura and Curtis DeYoung. Cornerstone I was a Utah LLC until July 2006 when Cornerstone II, an Idaho LLC was formed. Cornerstone I transferred all real property to Cornerstone II without paying consideration, rendering Cornerstone I insolvent (all references to Cornerstone generally encompass Cornerstone I and Cornerstone II). During discovery APS amended the complaint to add a claim of fraudulent conveyance.

Cornerstone constructed homes in the Cornerstone Subdivision located near Ammon, Idaho. APS lent monies to Cornerstone in order to help fund the Cornerstone Subdivision. The money that APS loaned was from the retirement accounts of Downs, Henderson, Dean DeYoung, Segura and Curtis DeYoung. Cornerstone and APS settled their disputes stemming from the collection of those monies and any applicable interest rates. At the time of trial, the only issue remaining before the district court was whether APS and Cornerstone had agreed to additional consideration for the monies loaned in the form of $750 for every lot sold in the Cornerstone Subdivision or whether that sum was contingent on APS providing full funding for the project. The district court found in favor of the plaintiffs, holding that the five individuals collectively were entitled to $750.00 per lot from the closing of each lot sold pursuant to the agreement made between APS and Cornerstone. Cornerstone appeals to this Court.

## ISSUES ON APPEAL

1. Whether the district court erred by finding that the contract is not barred by the statute of frauds.
2. Whether the district court erred by allowing joinder of Downs, Henderson, Dean DeYoung, Segura and Curtis DeYoung.
3. Whether the district court's findings are supported by the evidence presented at trial.
4. Whether Cornerstone is the prevailing party at trial and on appeal and entitled to attorney's fees pursuant to I.C. §§ 12-120, -121.
5. Whether American Pension Services is entitled to attorney's fees on appeal pursuant to I.C. §§ 12-120(3), -121.

## STANDARD OF REVIEW

We review a bench trial to determine "whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Watson v. Watson*, 144 Idaho 214, 217, 159 P.3d 851, 854 (2007) (quoting *Benninger v. Derifield*, 142 Idaho 486, 488, 129 P.3d 1235, 1237 (2006)). "The credibility and weight given to the evidence is in the province of the trial judge as the trier of fact, and the findings made by the trial judge will not be set aside unless clearly erroneous." *Fairfax v. Ramirez*, 133 Idaho 72, 75, 982 P.2d 375, 378 (Ct. App. 1999). We will not set aside factual findings that are supported by substantial and competent evidence; however, we exercise free review over issues of law. *Watson*, 144 Idaho at 217, 159 P.3d at 854.

When reviewing a discretionary decision of the trial court this Court determines (1) whether the court perceived the issue as discretionary; (2) whether the court acted within the bounds of that discretion and applied the correct legal standards; and (3) whether the court reached its decision through an exercise of reason. *Hayward v. Valley Vista Care Corp.*, 136 Idaho 342, 345, 33 P.3d 816, 819 (2001).

## ANALYSIS

**The district court did not err when it found that the oral contract is not barred by the statute of frauds.**

Cornerstone phrases this issue as "[d]id the district court abuse its discretion on June 6, 2007, by denying Defendant's motion for summary judgment, filed on April 19, 2007." "[T]his Court does not review the denial of [a motion for] summary judgment when there has been a trial on the merits." *Bybee v. Isaac*, 145 Idaho 251, 255 n.1, 178 P.3d 616, 620 n.1 (2008). The underlying theory for such rule is that it would be unjust to allow a reviewing court to review a motion for summary judgment when a decision has been made on the merits. *Keeler v. Keeler*, 124 Idaho 407, 410, 860 P.2d 23, 26 (1993). Cornerstone has appealed the denial of its summary judgment motion; however, the crux of Cornerstone's argument is that the district court erred by failing to apply the statute of frauds. Cornerstone first raised this issue in its motion for summary judgment and the district court addressed the applicability of the statute of frauds in its conclusions of law following trial. Although Cornerstone labels the issue as the denial of its motion for summary judgment, Cornerstone is actually appealing the district court's finding that the statute of frauds does not prohibit enforcement of this contract.

Cornerstone relies on I.C. §§ 9-505(4), -508 to support the contention that enforcement of this contract is barred by the statute of frauds. We hold that neither statute applies.

I.C. § 9-505 states that:

> In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:
> . . .
> 4. An agreement for the leasing, for a longer period than one (1) year, or for the sale, of real property, or of an interest therein, and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged.

I.C. § 9-505(4). Cornerstone argues that because the parties' agreement related to the sale of real property, this statute applies. Although this argument may have superficial appeal, as the contract was in contemplation of Cornerstone's sale of real property, the subject of the parties' contract was not for the sale of real property. Rather, the parties' contract related to the terms of repayment of a loan.

The dispute before the district court centered on the competing claims as to the terms of repayment of the loan. APS contended that Cornerstone had agreed to pay APS $750 for every lot sold in consideration of APS providing the initial funding for the project, and Cornerstone claimed that such payments were contingent on APS providing full funding for the project and because APS did not fund the entire project there was no entitlement to the $750 per lot payment. Although the parties' agreement contemplated that Cornerstone would enter into agreements with third parties for the sale of real property, as between the parties to this contract, the contract merely defined the terms of loan repayment. Therefore, I.C. § 9-505(4) is inapplicable.

I.C. § 9-508 states:

> No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one person of a purchaser of real estate of another shall be valid unless the same shall be in writing, signed by the owner of such real estate, or his legal, appointed and duly qualified representative.

I.C. § 9-508. However, this case was not about APS finding or procuring a purchaser for lots in the development. As stated above, the contract related to the terms of repayment of a loan obligation. I.C. § 9-508 simply has no application to the parties' agreement.

4

The district court did not err by refusing to bar enforcement of the contract based upon the statutes of frauds.

**The district court did not err by joining Downs, Henderson, Dean DeYoung, Segura and Curtis DeYoung**.

On August 10, 2007, the district court issued an order joining Drew Downs, Dale Henderson, Dean DeYoung, Harry Segura and Curtis DeYoung as plaintiffs. The parties were joined following the hearing on the second motion for summary judgment. APS and Cornerstone both agreed that the five individuals had some interest in the outcome of the litigation.[1] The district court allowed the new plaintiffs to be joined pursuant to I.R.C.P. 17(a) because APS was acting as the agent of the five individuals. The court found that the issue before the court, whether there was consideration in the form of a $750 per lot agreement, was identical with or without the plaintiffs being joined.

> [A] party with whom or in whose name a contract has been made for the benefit of another . . . may sue in this capacity without joining the party for whose benefit the action is brought; . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

I.R.C.P. 17(a). "'A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or participants.'" *Hayward*, 136 Idaho at 349, 33 P.3d at 823 (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2nd Cir. 1997)). Among other factors, the court may consider the "good faith of the plaintiff and prejudice experienced by the defendant." *Hayward*, 136 Idaho at 348, 33 P.3d at 822.

This Court finds no error in the district court's denial of Cornerstone's motion to strike the notices of appearance on behalf of the five individuals joined to this action. Cornerstone repeatedly complained to the court that the five individuals were difficult and costly to access for deposition purposes because most of them resided out of the state.[2] Cornerstone also complained

---

[1] APS argued for joinder pursuant to I.R.C.P. 17(a) and Cornerstone argued that the case should be dismissed and re-filed by the five individuals. The Court stated that "we'd create a lot more paper. It would be easier to join them. . . Keep the paper and save a few trees[.]"
[2] One of the newly joined parties resided in New Zealand.

5

that it would be difficult to defend any additional claims pursued by the five individuals. The district court rectified the situation by offering Cornerstone time to depose the five newly joined parties, offering to compel the five individuals to appear in Idaho for depositions, and limiting the claims of the five individuals to APS' sole claim of whether the $750 per lot was contingent on providing funding for the entire project. The addition of the five individuals did not alter the original complaint or factual allegations in this case. The district court did not err when it denied Cornerstone's motion to strike the notices of appearance. This Court affirms that decision.

**Whether the district court's findings are supported by the evidence presented at trial**.

Cornerstone contends that the following findings were reached by the district court in error because the district court relied on information in affidavits which were not admitted as evidence at trial and, therefore, these findings are not supported by substantial and competent evidence:

> **42**. On July 20, 2007, each owner of the five (5) IRA accounts filed affidavits with this Court, ratifying and confirming the actions of APS in this litigation and authorizing APS to continue pursuing the claims against Cornerstone. The signature pages to each of these affidavits were hand-filed with the Court on August 1, 2007.
> **43**. On August 1, 2007, this Court joined each of the five (5) IRA members, Downs, C. DeYoung, Sequra [sic], D. DeYoung and Henderson as plaintiffs.
> . . .
> **46**. Curtis DeYoung or APS was acting as an agent with authority to invest IRA funds owned by Downs, C. DeYoung, Sequra [sic], D. DeYoung and Henderson when the oral agreements were made with Cornerstone's promoters in 2003 and when the loans were made in 2003 through 2004. The $750 per lot consideration was part of the oral agreements made for plaintiffs Downs, C. DeYoung, Sequra [sic], D. DeYoung and Henderson.
> . . .
> **53**. Henderson, Downs, Dean DeYoung, and Segura had no knowledge of the loans made to Cornerstone. The foregoing individuals did not know of the substance of any agreement for funds loaned and terms of repayment between APS and Cornerstone.
> **54**. Henderson, Downs, Segura and Dean DeYoung orally delegated all decisions to Curtis DeYoung.
> . . .
> **56**. DeYoung, in his individual capacity, made investment decisions for all five account holders.
> **57**. DeYoung admitted that he is not a trustee and he is acting as a non-licensed financial advisor who is making investment decisions as a friend and/or familial

advisor. APS initially claimed it was entitled to the per lot fee. After discovery, it claimed the per lot fee was due to the five individuals.

APS asserts that paragraph 42 and paragraph 43 were detailing the procedural history in this case. APS further contends that paragraphs 46, 53, and 54 were supported by substantial and competent evidence in the record, and that paragraphs 56 and 57 were consistent with the evidence presented.

All the paragraphs that Cornerstone alleges as erroneous constitute findings of fact. Therefore, this Court's review is limited to whether those findings are clearly erroneous and not supported by substantial and competent evidence. The information contained in all the paragraphs came from various exhibits admitted at trial and the testimony of Curtis DeYoung at trial. The district court did not rely on the contested affidavits or evidence not produced at trial. This Court holds that the district court's findings were supported by substantial and competent, although conflicting, evidence and therefore, affirms the district court's findings of fact.

Cornerstone further contends that it was error for the district court to find that "APS was the agent of the five individual plaintiffs." However, one of Cornerstone's exhibits at trial was entitled "American Pension Services, Inc., Trust Agreement." That agreement stated that APS had the power to "commence or defend suits or legal proceedings with respect to the [IRA], and to represent [the account holder] in all such suits or legal proceedings." Although the trust agreement is unsigned it is uncontested that APS and Cornerstone entered into a contract for APS to loan Cornerstone monies. It is further uncontested that the monies APS loaned and controlled belonged to the five individuals. Curtis DeYoung also testified that an agreement existed between the five individuals and APS to hold and control their retirement accounts. Substantial and competent evidence exists to support the district court's finding that some form of a written agreement existed between APS and the five individuals and that APS was acting as the agent of the five individuals when it loaned monies to Cornerstone.

**Cornerstone was not the prevailing party at trial and attorney's fees were properly awarded to American Pension Services**.

Cornerstone contends that APS was not the prevailing party at the trial level because APS was in violation of the Employment Retirement Income Security Act (ERISA) and APS had no legal authority to distribute the funds to the five individuals. That is, without the joinder of the

five individuals prior to trial APS would not have the authority to distribute the funds from any monetary judgment because it is in violation of ERISA.

ERISA is codified at title 29, chapter 18 of the United States Code. Individual Retirement Accounts (IRA's) are dictated by 26 U.S.C. § 408.[3] Generally, if an IRA is in violation of 26 U.S.C. § 408 then it loses its tax exempt status. 26 U.S.C. § 408(e)(2). An assertion that a company has no legal existence because it is in violation of a statute is "irrelevant to the question of the [contractual] liability of [another company] to pay for the goods, since such defense [is] a mere collateral attack on the organization of the corporation[.]" *D.R. Wilder Mfg. Co. v. Corn Prod. Ref. Co.*, 236 U.S. 165, 171-72 (1915). Here, Cornerstone's contention is merely a collateral attack on APS. Evidence existed to support the finding that APS had the power to control and invest the monies of the five individuals and that APS was acting as the agent of the five individuals when it filed suit to collect those monies. Whether APS or the five individuals have any tax liability arising out of the transaction with Cornerstone has no bearing on whether Cornerstone is liable to APS for the underlying contract. This Court affirms the district court; APS was the prevailing party below and attorney's fees were properly awarded.

**American Pension Services is entitled to attorney's fees on appeal pursuant to I.C. § 12-120(3).**

American Pension Services requests attorney's fees on appeal pursuant to I.C. § 12-120(3). I.C. § 12-120(3) provides for the recovery of attorney's fees to the prevailing party in an action involving a commercial transaction. I.C. § 12-120(3). The district court found that this was a commercial transaction and Cornerstone does not appeal that finding. We agree that the transaction between Cornerstone and APS constitutes a transaction that is not for personal or household purposes. I.C. § 12-120(3). Therefore, this Court awards attorney's fees to APS pursuant to I.C. § 12-120(3). Costs to APS.

### CONCLUSION

For the foregoing reasons this Court affirms the decision of the district court.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON, **CONCUR.**

---

[3] "For purposes of this section, the term 'individual retirement account' means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust meets the following requirements[.]" 26 U.S.C. § 408(a).