# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43532

| | | |
|---|---|---|
| RUSSELL STEVENS and LAURA STEVENS, husband and wife, | ) ) ) | |
| Plaintiffs, | ) ) ) | Coeur d'Alene, August 2016 Term |
| v. | ) ) | 2016 Opinion No. 98 |
| KENNETH EYER and SALLY EYER, husband and wife; TIMOTHY FARRELL and NANCY FARRELL, husband and wife, and JOHN DOES I-X, being persons and/or entities whose identities and liabilities are yet to be determined, | ) ) ) ) ) ) ) | Filed: September 12, 2016  Stephen Kenyon, Clerk |
| Defendants. | ) ) | |
| ------------------------------------------------------- | ) | |
| KENNETH EYER and SALLY EYER, husband and wife, | ) ) ) | |
| Third Party Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | |
| IDAHO FOREST GROUP, LLC, | ) ) | |
| Third Party Defendant-Respondent. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Hon. Barbara A. Buchanan, District Judge.

The judgment of the district court is affirmed.

Bistline Law, PLLC, Coeur d'Alene, for appellants. Arthur Bistline argued.

Smith + Malek PLLC, Coeur d'Alene, for respondent. Peter J. Smith argued.

_____

HORTON, Justice.

Kenneth and Sally Eyer appeal from the district court's award of attorney fees to Idaho Forest Group, LLC (IFG). The Eyers and IFG entered into a Log Purchase Agreement in which

1

IFG agreed to purchase timber harvested from the Eyers' land. Before logging, IFG sent an agent to the Eyers' property to assist them in locating property lines. When the logging occurred, the loggers mistakenly cut timber located on neighboring land. The neighbors sued the Eyers for timber trespass and the Eyers brought a third-party action against IFG for breach of an assumed duty to properly mark the property lines. A jury found in favor of IFG, finding that IFG had not assumed a duty to the Eyers. The district court then awarded IFG $95,608 in attorney fees pursuant to Idaho Code section 12-120(3).

On appeal, the Eyers contend the district court erred in awarding fees under Idaho Code section 12-120(3), arguing (1) the gravamen of the Eyers' complaint was not a commercial transaction and (2) the Eyers did not sell timber for a "commercial purpose" since they used the proceeds of the sale to pay medical bills. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2009, the Eyers and IFG entered into a Log Purchase Agreement in which IFG agreed to purchase cut timber from the Eyers. An IFG representative, Jeff Berend, subsequently visited the Eyers' property. Berend walked the property with the Eyers' son-in-law, Tim Farrell, and contacted a forester to survey the west line of the property.[1] When the harvest took place, the loggers inadvertently took trees from Russell and Laura Stevens' property, located to the north of the Eyers' property line.

The Stevens sued the Eyers for timber trespass in 2012, alleging that $1,600 of timber was removed from their property and seeking treble damages under Idaho Code section 6-202. The Eyers subsequently filed a third-party complaint against IFG for indemnification and, alternatively, contribution. The district court dismissed the Eyers' claims against IFG on summary judgment but granted the Eyers leave to file an amended complaint that alleged a cause of action in negligence. In their amended complaint, the Eyers alleged that IFG assumed a duty to locate the property boundary between the Eyers' and Stevens' property. The jury found that IFG had not assumed this duty. The district court entered judgment in IFG's favor on April 29, 2015.

Afterwards, IFG moved for an award of $95,608 in attorney fees under Idaho Code section 12-120(3). On July 13, 2015, the district court issued its memorandum opinion on the

---

[1] In his deposition, Berend testified that he did not believe that he and Farrell had discussed locating the north line of the property at the time because they did not think there was much timber on the north line.

motion and awarded IFG the full amount of their requested attorney fees. An amended judgment reflecting the award of attorney fees was entered on July 13, 2015. The Eyers moved to alter or amend the district court's award, arguing that there was no commercial transaction because the Eyers were going to pay medical bills with the proceeds of the timber sale.[2] The district court denied the Eyers' motion in a decision dated August 7, 2015. The Eyers timely appealed.

## II. STANDARD OF REVIEW

"Whether an action is based on a commercial transaction is a question of law over which this Court exercises free review."[3] *Idaho Transp. Dep't v. Ascorp, Inc.*, 159 Idaho 138, 140, 357 P.3d 863, 865 (2015).

## III. ANALYSIS

Idaho Code section 12-120(3) provides:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and *in any commercial transaction* unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

---

[2] In an affidavit, Kenneth Eyer testified that "[d]ue to unexpected medical expenses, my wife and I decided to log our property . . . ."

[3] IFG contends a different standard of review is applicable in this case, citing *Brown v. Greenheart*, 157 Idaho 156, 335 P.3d 1 (2014). There, we stated:

> Greenheart argues that the district court erred when it awarded attorney fees below finding that the purchase and sale agreement was a commercial transaction. Greenheart submits that Idaho Code section 12-120(3) is not applicable because the evidence does not demonstrate that Greenheart had a commercial purpose for the purchase of the property. Greenheart further contends that there is no evidence that the Browns had a commercial purpose for selling the property. Greenheart argues that the purchase and sale agreement does not amount to a commercial transaction because the evidence fails to demonstrate that Greenheart purchased the property as an investment. Greenheart claims that the evidence fails to demonstrate that Greenheart intended to use the property for any commercial venture. Finally, Greenheart argues that the district court's reliance on how the Browns used their water rights in the past was erroneous because such uses did not bear on the actual land transaction between the Browns and Greenheart. *The thrust of Greenheart's arguments invite this Court to revisit and re-decide factual determinations already made by the district court. This we will not do.*

*Id.* at 167-68, 335 P.3d at 12-13. This appeal does not require us to consider whether the standard of review is more accurately characterized as a mixed question of law and fact. *Brown* presented a different issue than the present appeal. There, the appellant contested factual findings made by the district court regarding whether the property was purchased as an investment or a commercial venture. *Id.* In this appeal, the parties do not argue about facts, i.e., there is no dispute as to whether the proceeds of the Log Purchase Agreement were used to pay the Eyers' medical bills. The district court acknowledged that the Eyers "were purportedly going to use the sale proceeds to pay medical bills."

"This Court exercises free review of the district court's application of the relevant law to the facts." *City of Challis v. Consent of Governed Caucus*, 159 Idaho 398, 400, 361 P.3d 485, 487 (2015). This appeal simply presents this Court with the legal question whether Idaho Code section 12-120(3) applies to the undisputed facts of this case.

*The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes.*

The Eyers contend that the district court erred in awarding fees under Idaho Code section 12-120(3), arguing (1) the gravamen of the Eyers' complaint was not a commercial transaction and (2) the Eyers did not sell timber for a commercial purpose since they used the proceeds of the sale to pay medical bills. These arguments are addressed in turn.

## A. The district court did not err when it determined the gravamen of the Eyers' lawsuit against IFG was a commercial transaction.

"[W]hether a party can recover attorney fees under Idaho Code section 12–120(3) depends on whether the gravamen of a claim is a commercial transaction. *Sims v. Jacobson*, 157 Idaho 980, 985, 342 P.3d 907, 912 (2015). "A gravamen is 'the material or significant part of a grievance or complaint.' " *Id.* (quoting *Merriam Webster's Collegiate Dictionary* 509 (10th ed.1993)). "[C]ourts analyze the gravamen claim by claim." *Id.* "To determine whether the significant part of a claim is a commercial transaction, the court must analyze whether a commercial transaction (1) is integral to the claim and (2) constitutes the basis of the party's theory of recovery on that claim." *Id.*

In both its initial decision regarding attorney fees and its subsequent decision denying the Eyers' motion to alter or amend, the district court concluded that a commercial transaction formed the gravamen of the Eyers' lawsuit against IFG. The district court stated:

> [T]his Court finds that a commercial transaction formed the gravamen of the Eyers' lawsuit against IFG because the Eyers' 'assumed duty' negligence claim arose out of the commercial transaction between the Eyers and IFG for the purchase of cut timber under the parties' 2009 Log Purchase Agreement. Jeff Berend travelled to the Eyers' property in furtherance of the parties' Log Purchase Agreement. Had there been no commercial transaction between the parties for the cutting and sale of timber, Jeff Berend would not have been on the Eyers' property to—as the Eyers allege—voluntarily assume a duty to identify the property lines before logging.

On appeal, the Eyers contend that the district court erred because "[t]he gravamen of the Eyers' complaint was not based on any contractual obligation of IFG, but upon an assumed duty in tort so it was error to conclude that the Eyers' suit was based upon a commercial transaction." IFG responds that this Court has already held that allegations of tortious conduct do not prohibit fee awards under Idaho code section 12-120(3).

IFG is correct. "The commercial transaction ground in I.C. § 12–120(3) neither prohibits a fee award for a commercial transaction that involves tortious conduct . . . , nor does it require

4

that there be a contract." *Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 728, 152 P.3d 594, 599 (2007); *see also Bridge Tower Dental, P.A. v. Meridian Computer Ctr., Inc.*, 152 Idaho 569, 575, 272 P.3d 541, 547 (2012). This rule is based upon the language in the second paragraph of Idaho Code section 12-120(3), which mandates an award of a reasonable attorney fees to the prevailing party "in any commercial transaction." *City of McCall v. Buxton*, 146 Idaho 656, 665, 201 P.3d 629, 638 (2009) (quoting I.C. § 12-120(3)).

Our decision in *Bridge Tower Dental, P.A.* provides an example of a commercial transaction that gave rise to a tort claim. There, a dental office purchased a computer system that came with a three year warranty. 152 Idaho at 571, 272 P.3d at 543. The computer center mistakenly erased all of the dental office's data and the office sued for "breach of contract and negligence under the law of bailment." *Id.* at 570, 272 P.3d at 542. This Court determined that the negligence claim arose out of a commercial transaction, stating:

> This Court finds that the lower court was correct in finding that the bailment, whether express or implied, constituted a commercial transaction which served as the basis upon which Bridge Tower was trying to recover. A commercial transaction formed the gravamen of the lawsuit because the negligence claim arose out of the commercial transaction between Bridge Tower and Meridian Computer to replace the failing hard drive under the warranty agreement.

*Id.* at 575, 272 P.3d at 547.

Like the negligence claim in *Bridge Tower Dental, P.A.*, a commercial transaction was integral to the Eyers' assumed duty tort claim and constituted the basis of the Eyers' theory of recovery on that claim. The Eyers' amended complaint alleged:

> 4) On or about August 25, 2009, Eyers and IFG entered into an agreement that IFG would purchase cut timber from the Eyers' property.
>
> . . .
>
> 6) IFG voluntarily assumed a duty to assist the Eyers to determine the necessity of locating the Eyers' property lines. IFG directed Jeff Berend to travel to the Farrell's property where Jeff Berend proceeded to advise Farrell of which property lines needed to be identified.

As the Eyers' complaint illustrates, the commercial transaction to sell timber was integral to the Eyers' tort allegations and constituted the basis of the Eyers' theory of recovery. Without the commercial transaction to sell timber, Berend would have never visited the Eyers' property and the Eyers' claim that he voluntarily assumed a duty to identify property lines would have never

arisen. The district court did not err by determining that a commercial transaction was the gravamen of the Eyers' cause of action.

**B. The district court did not err by deciding that the Eyers had a "commercial purpose" when they sold timber to IFG.**

This Court has held that "in order for a transaction to be commercial, each party to the transaction must enter the transaction for a *commercial purpose*." *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 756, 274 P.3d 1256, 1271 (2012).

In its decision denying the Eyers' motion to alter or amend, the district court noted that the Eyers had not provided it with "case law supporting their argument that because they were purportedly going to use the sale proceeds to pay medical bills, the transaction should not be considered a commercial transaction." The district court found that "the parties' commercial transaction for the sale and purchase of cut timber was integral to the Eyers' 'assumed duty' negligence claim, and constituted the basis of the Eyers' theory of recovery on that claim."

The Eyers contend that no "commercial purpose" existed because they contracted with IFG to obtain funds to pay personal medical bills. The Eyers contend that "[f]or a transaction to be 'commercial', the party's intent must be to put whatever consideration a party receives to a commercial purpose." This claim is incorrect.

The Eyers attempt to analogize their case to *Carrillo* and *Frontier Dev. Grp.*, two cases in which this Court held transactions were not commercial. Those decisions are distinguishable. In *Carrillo*, this Court determined that car owners who contracted for a tire rotation and inspection did not enter the transaction for a "commercial purpose" because the vehicle was a personal vehicle. *Carrillo*, 152 Idaho at 756, 274 P.3d at 1271. Because the car owners transacted for personal reasons, this Court determined the transaction "lacked the symmetry of commercial purpose necessary to trigger I.C. § 12–120(3)." *Id.* In *Frontier Dev. Grp.*, this Court determined "the Caravellas' purpose for entering into the agreement . . . was to construct a house for their personal use; therefore the transaction was not commercial." *Frontier Dev. Grp., LLC v. Caravella*, 157 Idaho 589, 599, 338 P.3d 1193, 1203 (2014). The Eyers' purpose in conducting business with IFG was different from the purchase of services for a personal vehicle in *Carrillo* and the construction of a personal home in *Frontier Dev. Grp.* because the Eyers entered into the Log Purchase Agreement to earn income, something that this Court has previously characterized as commercial.

This Court has previously characterized transactions as commercial when the purpose for entering into the transaction was to generate income. In *Watson*, two brothers purchased property to use "as a family retreat and to supplement their incomes through selective logging." *Watson v. Watson*, 144 Idaho 214, 216, 159 P.3d 851, 853 (2007). When a lawsuit arose concerning the division of the property and logging proceeds, this Court held that a commercial transaction was the gravamen of the case "because the parties purchased the property in large part for purposes of logging and the district court was called upon to apportion the logging proceeds." *Id.* at 219, 159 P.3d at 856. Likewise, in *Brown* this Court determined that the sellers in a real estate transaction had a "commercial purpose," even though the sellers resided on the property, because the sellers used the property "for ranching and farming—operations on which the [sellers] relied to derive income." *Brown v. Greenheart*, 157 Idaho 156, 168, 335 P.3d 1, 13 (2014).

It is true that in neither *Watson* nor *Brown* did we address how the recipient of income intended to spend their income. That is because it did not matter. The adjective "commercial" means:

1. of, relating to, or characteristic of commerce.
2. engaged in commerce.
3. prepared, done, or acting with sole or chief emphasis on salability, profit, or success:
   *a commercial product; His attitude toward the theater is very commercial.*
4. able to yield or make a profit:
   *We decided that the small oil well was not commercial.*

*Dictionary.com Unabridged.* Random House, Inc.

http://dictionary.reference.com/browse/commercial (accessed: August 30, 2016).

Earning income is the quintessential act of engaging in commerce. Most people who are employed use their income for "personal or household purposes," such as paying for lodging, food, utilities, and entertainment. Yet, by virtue of their employment, they are engaged in commerce. It is for that reason that this Court has long recognized that "[a]ctions brought for breach of an employment contract are considered commercial transactions under Idaho Code section 12-120(3)." *Campbell v. Parkway Surgery Ctr., LLC*, 158 Idaho 957, 969, 354 P.3d 1172, 1184 (2015). The district court did not err by determining that the Eyers had a "commercial purpose" when they sold timber to IFG.

**C. We award IFG attorney fees on appeal.**

The Eyers request attorney fees on appeal under Idaho Code section 12-121, contending it is undisputed that the Eyers had no commercial purpose and that IFG's defense of this appeal was frivolous. IFG requests attorney fees on appeal under Idaho Code section 12-120(3). Because the Eyers have not prevailed in this appeal, they are not entitled to an award of attorney fees. Since the Eyers' claim arose from a commercial transaction and IFG has prevailed in this appeal, we award attorney fees on appeal to IFG pursuant to Idaho Code section 12-120(3).

## IV. CONCLUSION

We affirm the district court's award of attorney fees to IFG and award attorney fees and costs on appeal to IFG.

Justices EISMANN, BURDICK and W. JONES, **CONCUR**.

Chief Justice J. JONES, specially concurring.

I concur in the Court's opinion because it correctly applies the law, even though the outcome is most unfortunate for the Eyers. It appears to me that the legal system catastrophically failed Kenneth and Sally Eyer.

This case started out as a $1,600 timber trespass. Pursuant to Idaho Code section 6-202, the Eyers were obligated to their neighbors, Russell and Laura Stevens, for treble damages. The Stevens filed suit, seeking a whopping $268,770 in damages. Eventually the case was settled upon the Eyers' agreement to pay $50,000, plus interest, out of the estate of the last of them to die (they were octogenarians). Trial testimony indicated that $15,000 of the settlement was for damages and $35,000 for the Stevens' attorney fees incurred in the suit. The Eyers had incurred their own attorney fees and costs in the sum of $37,934 by the time of the settlement.

The Eyers' third-party claim against Idaho Forest Group then went to trial and the Eyers lost. The district court granted Idaho Forest Group attorney fees and costs in the amount of $97,821.30. Thus, excluding attorney fees incurred by the Eyers in pursuing their third-party complaint and this Court's award to Idaho Forest Group of its fees on appeal, the Eyers are out a minimum of $185,755.30 on a $1,600 timber trespass.

During oral argument, I inquired of counsel for the Eyers as to the amount he had charged with regard to litigation of the third party complaint. Counsel indicated it was less than Idaho Forest Group had been awarded but he did not recall the amount. Even if it were half the amount of fees incurred by and awarded to Idaho Forest Group in district court, when combined

8

with the fees the Eyers will pay the attorneys on both sides of this appeal the amount will likely approach a quarter of a million dollars.

It is not clear from the record how the Eyers ended up in this position but it is a tragedy and does not speak well for the legal system. It is imperative that court procedures be reformed to expedite the process and reduce the cost of litigation to avert a repeat of this unfortunate story.