# IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 45580

DICKINSON FROZEN FOODS, INC., an Idaho corporation,

  Plaintiff-Appellant,

v.

J.R. SIMPLOT COMPANY, a Nevada corporation; THOMPSON COBURN, LLP, a Missouri limited liability partnership; YARMUTH WILSDON, PLLC, a Washington professional limited liability company; and MARK MC KELLAR, an individual,

  Defendants-Respondents,

and

JOHN DOE I-X, unknown individuals and entitites,

  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**SECOND AMENDED OPINION**
Boise, January 2019 Term

Opinion Filed: May 3, 2019 Nunc
Pro Tunc to February 13, 2019

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

District court grant of summary judgment on breach of contract, <u>affirmed</u> in part, <u>reversed</u> and <u>remanded</u> in part.

Trout Law, PLLC, Boise, for appellant Dickinson Frozen Foods, Inc. Kim Trout argued.

Gjording Fouser, Boise, for respondent J.R. Simplot Company and Mark McKellar. Bobbi K. Dominick argued.

Hepworth Holzer, Boise, for respondent Thompson Coburn, LLP. John J. Janis argued.

Byrnes Keller Cromwell LLP, Seattle, for respondent Yarmuth Wilsdon, PLLC. Bradley Keller argued.

---

1

BURDICK, Chief Justice.

This action arises out of Ada County and involves statements made in a complaint and amended complaint that were filed in Washington Federal District Court (the Washington litigation). In December 2016, the J.R. Simplot Company (Simplot) commenced the Washington litigation by filing suit related to the dissolution of a business relationship between Simplot and two entities Simplot co-owned with Frank Tiegs. Dickinson Frozen Foods (DFF), also operated by Tiegs, was not named as a party in the Washington litigation; however, the complaint contained allegedly defamatory statements about DFF. In March 2017, DFF filed suit in Ada County district court alleging defamation per se against Simplot and its Food Group President Mark McKellar (collectively, Simplot), as well as the two law firms who represented Simplot in the Washington litigation—Yarmuth Wilsdon, PLLC (Yarmuth) and Thompson Coburn, LLP (Thompson). DFF also claimed breach of contract against Simplot, claiming Simplot had breached a non-disclosure agreement (NDA). The district court dismissed DFF's claims for defamation per se against all defendants, determining the statements were protected by litigation privilege. Later, the district court granted Simplot's motion for summary judgment on DFF's breach of contract claim. DFF timely appealed and we affirm in part, and reverse and remand in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In December 2016, Simplot filed the Washington litigation related to the dissolution of a business relationship between Simplot and two companies owned by Frank Tiegs. Simplot co-owned two food processing businesses, Pasco Processing, LLC (Pasco), and Gem State Processing, LLC (Gem State). The other co-owner of Pasco was the Washington Potato Company (WPC), and the other co-owner of Gem State was the Oregon Potato Company (OPC). Tiegs is the principal owner of both WPC and OPC, and WPC and OPC are the managers of Pasco and Gem State. Simplot contended WPC, OPC, and Tiegs had mismanaged Pasco and Gem State, and thus Simplot filed the Washington litigation.

Tiegs is also the president of DFF. DFF was not named as a party in either the complaint or the amended complaint that were filed in the Washington litigation; however, the complaint and amended complaint contained statements about DFF that DFF alleged were defamatory. The Washington complaint also attached an audit report that contained damaging information about

2

DFF. The Washington complaint, along with the attached report, were later sent to Northwest Farm Credit Services (NFCS).

In March 2017, DFF filed suit in Ada County district court against Simplot, Yarmuth, and Thompson alleging defamation per se against all respondents for statements made in the complaint in the Washington litigation. DFF also claimed breach of contract against Simplot, contending Simplot breached the NDA when it sent the complaint with the attached report to NFCS.

DFF's complaint did not attach the Washington complaint that DFF alleged contained defamatory statements about it. However, the DFF complaint included quotes from the Washington complaint. The DFF complaint contained the following statements that DFF alleged were defamatory:

- "In the [Washington] Complaint, Simplot wrongfully, maliciously, unlawfully, intentionally, recklessly, and falsely asserted that 'on or about December 1, 2015, in yet another incident, OSHA cited [DFF], another Tiegs affiliate located in Sugar City, Idaho, for a serious release of anhydrous ammonia' . . . and that DFF held a '. . . widespread disregard for safety laws and standards.'"

- "In the [Washington] Complaint, Simplot wrongfully, maliciously, recklessly, intentionally misleadingly and falsely asserted, that on 'May 25, 2016, OSHA cited and fined DFF again for willful violations safety laws . . . .'"

- "In the [Washington] Complaint, Simplot wrongfully, maliciously, recklessly, intentionally misleadingly and falsely asserted, that on 'May 31, 2016, OSHA cited and fined DFF again for willful violations of safety laws, including but not limited to, those found by OSHA through its investigations of the December 2015 incident.'"

- "DFF had been 'cited' with a major violation of [FSSC 22000] . . . 'after observing DFF's repeated failure to provide hot water in its plant's restrooms . . . .'"

DFF claimed the statements in the Washington complaint were not relevant or material to the claims alleged or relief sought by Simplot.

Following DFF's filing of its complaint, Simplot filed a Rule 12(b)(6) motion to dismiss or alternatively, a Rule 12(c) motion for partial judgment, claiming the alleged defamatory statements were protected by litigation privilege. Simplot contended litigation privilege barred DFF's defamation per se claim because the statements in the Washington complaint were made

3

in the course of judicial proceedings and were reasonably related to the Washington litigation. Simplot stated, "Teigs' affiliate food processing companies were discussed . . . as evidentiary support favoring the appointment of a third-party receiver for . . . Pasco and Gem State." Yarmuth and Thompson also both filed motions to dismiss claiming the statements were protected by litigation privilege and that the district court did not have personal jurisdiction over them, as they were both out of state law firms. Prior to the district court ruling on the motions to dismiss, DFF filed a motion for summary judgment arguing the litigation privilege did not apply and filed a motion to amend its complaint.

In June 2017, the district court granted Simplot, Yarmuth, and Thompson's motions to dismiss the defamation per se claims, determining the defamatory statements were protected by litigation privilege. The district court stated the statements were reasonably related to the Washington litigation so as to be privileged. The court noted it was making its determination only on the four corners of DFF's complaint. The court went on to say that because it was dismissing all claims against Yarmuth and Thompson, it would not consider the arguments as to personal jurisdiction. The district court held that DFF's breach of contract claim against Simplot was not dismissed. The district court then struck DFF's motion to amend its complaint and motion for partial summary judgment as moot.

Following the district court's decision, DFF moved for reconsideration and filed a second motion for leave to amend its complaint. The district court denied DFF's motion for reconsideration, reiterating that the statements DFF alleged as defamatory were protected by litigation privilege. The court also noted that litigation privilege was not waived when the Washington litigation complaint was published to NFCS because NFCS is a creditor of Pasco, and as such, Pasco has an interest in informing its creditors of pending lawsuits.

The district court also denied DFF's second motion for leave to amend its complaint. In its memorandum decision, the court addressed both DFF's original motion for leave to amend that had previously been stricken as moot, and its second motion for leave to amend. The court reaffirmed that it did not err in prohibiting DFF from having leave to amend its complaint the first time. The court also denied DFF's second motion for leave to amend its complaint stating DFF had not set forth any claims that would survive summary dismissal.

The district court then granted Simplot's motion for summary judgment on DFF's breach of contract claim that alleged Simplot breached the NDA. The court stated the NDA was

4

unambiguous and did not govern the disclosure alleged by DFF in its claim. Later, the district court awarded attorney fees and some costs to McKellar, Thompson, and Simplot. DFF timely appealed.

## II. ISSUES ON APPEAL

1. Whether this Court has personal jurisdiction over Yarmuth and Thompson.

2. Whether the district court properly determined the alleged defamatory statements were protected by litigation privilege and subsequently dismissed DFF's defamation claim.

3. Whether the district court abused its discretion when it denied DFF's motion for leave to amend its complaint.

4. Whether the district court erred in granting Simplot's motion for summary judgment on DFF's breach of contract claim.

5. Whether the district court abused its discretion in awarding attorney fees and certain costs below and whether any party is entitled to attorney fees on appeal.

## III. STANDARDS OF REVIEW

**Motion to Amend:**

"A district court's denial of a plaintiff's motion to amend their complaint is governed by an abuse of discretion standard of review." *Elliott v. Murdock*, 161 Idaho 281, 286, 385 P.3d 459, 464 (2016) (citing *Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 210, 61 P.3d 557, 567 (2002)). When this Court reviews whether a trial court has abused its discretion, the four-part inquiry is "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 864, 421 P.3d 187, 194 (2018).

**Motion to Dismiss and Summary Judgment:**

A claim can be dismissed pursuant to Idaho Rule of Civil Procedure 12(b)(6) when it "fail[s] to state a claim upon which relief can be granted." "The issue is not whether the plaintiff will ultimately prevail, but whether the party is 'entitled to offer evidence to support the claims.'" *BHA Investments, Inc. v. State*, 138 Idaho 348, 350, 63 P.3d 474, 476 (2003) (citation omitted).

> When this Court reviews an order dismissing an action pursuant to I.R.C.P. 12(b)(6), we apply the same standard of review we apply to a motion for summary judgment. A 12(b)(6) motion looks only at the pleadings to determine whether a claim for relief has been stated. On review of a dismissal this Court determines whether the non-movant has alleged sufficient facts in support of his

5

claim, which if true, would entitle him to relief. In doing so, the Court draws all reasonable inferences in favor of the non-moving party.

*Savage v. Scandit Inc.*, 163 Idaho 637, 640, 417 P.3d 234, 237 (2018) (quoting *Hammer v. Ribi*, 162 Idaho 570, 573, 401 P.3d 148, 151 (2017)).

> "When reviewing an order for summary judgment, the standard of review for this Court is the same standard used by the district court in ruling on the motion." *Davison v. Debest Plumbing, Inc.*, 163 Idaho 571, 574, 416 P.3d 943, 946 (2018) (quoting *Mendenhall v. Aldous*, 146 Idaho 434, 436, 196 P.3d 352, 354 (2008)). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "Summary judgment is appropriate if the pleadings, affidavits, and discovery documents on file with the court, read in a light most favorable to the nonmoving party, demonstrate no material issue of fact such that the moving party is entitled to a judgment as a matter of law." *Partout v. Harper*, 145 Idaho 683, 685, 183 P.3d 771, 773 (2008). "If the evidence reveals no genuine issue as to any material fact, then all that remains is a question of law over which this Court exercises free review." Id. at 685-86, 183 P.3d at 773-74.

*Lee v. Willow Creek Ranch Estates No. 2 Subdivision Homeowners' Ass'n, Inc.*, No. 45390, 2018 WL 6188276, at *2 (Idaho Nov. 28, 2018).

**Attorney Fees:**

"An award of attorney fees and costs is within the discretion of the trial court and subject to an abuse of discretion standard of review." *Ballard v. Kerr*, 160 Idaho 674, 716, 378 P.3d 464, 506 (2016) (quoting *Smith v. Mitton*, 140 Idaho 893, 901, 104 P.3d 367, 375 (2004)). For brevity, the four-part abuse of discretion standard is that articulated above in *Lunneborg*, 163 Idaho at 864, 421 P.3d at 194.

## IV. ANALYSIS

### A. This Court does not have personal jurisdiction over Yarmuth or Thompson.

The initial issue is whether this Court has personal jurisdiction over Yarmuth or Thompson. Yarmuth is a Seattle, Washington based law firm and Thompson is a St. Louis, Missouri based law firm. The district court did not address the issue, stating that because it was dismissing all claims against Yarmuth and Thompson based on litigation privilege, it would not consider Yarmuth and Thompson's personal jurisdiction arguments. Neither Yarmuth or Thompson cross-appeal the district court's decision; however, Yarmuth raised the issue of the district court's lack of personal jurisdiction as an additional issue on appeal and Thompson incorporates by reference Yarmuth's statement of issues on appeal. DFF contends this Court should not consider the personal jurisdiction issue because it was not decided by the district court

below, and thus would constitute an advisory opinion. As discussed below, this Court does not have personal jurisdiction over Yarmuth or Thompson.

As an initial matter, Yarmuth and Thompson did not need to file cross-appeals on the personal jurisdiction issue. Idaho Appellate Rule 15 provides that:

> After an appeal has been filed, a timely cross-appeal may be filed from any interlocutory or final judgment or order. If no affirmative relief is sought by way of reversal, vacation or modification of the judgment or order, an issue may be presented by the respondent as an additional issue on appeal under Rule 35(b)(4) without filing a cross-appeal.

Here, the district court declined to address the jurisdiction issue. As such, Yarmuth and Thompson are not seeking to "revers[e], vacat[e], or modif[y] . . . . the judgment or order . . . ." I.A.R. 15. Thus, Yarmuth and Thompson were permitted to present the personal jurisdiction issue on appeal without filing a cross-appeal. *Id.*

In any event, "[t]he question of jurisdiction is fundamental and cannot be ignored. Even if jurisdictional questions are not raised by the parties, the Court must address them on its own initiative." *State v. Hartwig*, 150 Idaho 326, 328, 246 P.3d 979, 981 (2011) (quoting *Diamond v. Sandpoint Title Ins., Inc.*, 132 Idaho 145, 148, 968 P.2d 240, 243 (1998)). "The question of the existence of personal jurisdiction over an out-of-state defendant is one of law, which this Court reviews freely." *Knutsen v. Cloud*, 142 Idaho 148, 150, 124 P.3d 1024, 1026 (2005) (quoting *McAnally v. Bonjac, Inc.*, 137 Idaho 488, 491, 50 P.3d 983, 986 (2002)).

We recently addressed personal jurisdiction as it relates to out-of-state defendants and said that:

> There are two requirements for an Idaho court to properly exercise jurisdiction over an out-of-state defendant: (1) the act giving rise to the cause of action must fall within the scope of Idaho's long-arm statute, Idaho Code section 5-514; and (2) jurisdiction must not violate the out-of-state defendant's due process rights.

*Gailey v. Whiting*, 157 Idaho 727, 730, 339 P.3d 1131, 1134 (2014). "Idaho's long-arm statute, Idaho Code section 5-514, provides for the exercise of personal jurisdiction over claims arising out of an out-of-state defendant's contacts with Idaho." *Id.* (citing *Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 726, 152 P.3d 594, 597 (2007)). Idaho Code section 5-514 provides in part that:

> Any person, firm, company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction

7

of the courts of this state as to any cause of action arising from the doing of any of said acts:

. . .

(b) The commission of a tortious act within this state . . . .

"The exercise of personal jurisdiction over out-of-state defendants who do any of the acts enumerated in Idaho Code section 5-514 extends only 'as to any cause of action arising from the doing of any of said acts.'" *Gailey*, 157 Idaho at 730, 339 P.3d at 1134 (quoting *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 75, 803 P.2d 978, 981 (1990)). That is, "not just any contacts by the defendant with Idaho that will sustain the exercise of specific personal jurisdiction, but only those out of which the suit arises or those that relate to the suit." *Houghland Farms, Inc.*, 119 Idaho at 75, 803 P.2d at 981.

In *Gailey*, we addressed a case somewhat similar to the present case. In *Gailey*, an Oregon resident bought a life insurance policy from an agent who was an Idaho resident at the time. 157 Idaho at 729, 339 P.3d at 1133. Later, the agent moved to Hawaii and became a resident of Hawaii. *Id.* The Oregon resident contacted the agent believing the agent still lived in Idaho; however, the agent was in Hawaii at the time of the conversation. *Id.* The agent gave advice that resulted in poor tax consequences for the Oregon resident, and the Oregon resident filed suit in Idaho alleging the agent was negligent. *Id.* The Oregon resident alleged "that even though [the agent] committed his tortious act while he was physically present in Hawaii, the effects of the tortious act were felt in Idaho and therefore should be characterized as occurring in Idaho." *Id.* at 731, 339 P.3d at 1135. This Court noted that neither party was a resident of Idaho, and also noted that whether the "effects" of the tort were felt in Idaho was more akin to the due process prong of personal jurisdiction, rather than in the analysis of Section 5-514(b) of Idaho's long-arm statute. *Id.* at 732, 339 P.3d at 1136. Thus, this Court stated that "[b]ecause [the agent] did not commit the alleged tort in Idaho, there is no basis in this case over which the district court could have exercised personal jurisdiction over [the agent] under Idaho Code section 5-514(b)." *Id.* at 732, 339 P.3d at 1136.

In this case, DFF does not provide argument on this point on appeal, instead directing this Court to its trial briefing. A review of that briefing in the record reveals that DFF states only that "DFF has satisfied the first factor of this test by alleging long-arm tort jurisdiction under § 5-515(b) and by its extensive descriptions of the defamation." However, the only acts committed by Yarmuth and Thompson were the filing of the complaint in the Washington litigation, and the

8

sending of that complaint to NFCS—both acts which occurred in Washington. While DFF later argues in trial briefing that the "effects" were felt by DFF in Idaho, this argument fails for the same reason it did in *Gailey*—the "effects" test is a test utilized in the second prong of the personal jurisdiction analysis, which is the prong discussing due process. As noted above, for Idaho courts to have personal jurisdiction the act must fall within Idaho's long arm statute *and* due process rights must not be offended. *Gailey*, 157 Idaho at 730, 339 P.3d at 1134. Because Yarmuth and Thompson have not committed any tort within Idaho, the long arm statute is not satisfied. Therefore, we do not have personal jurisdiction over Yarmuth or Thompson. Accordingly, we do not address DFF's claims against Yarmuth and Thompson, and proceed to address only DFF's claims against Simplot.

**B.    The district court did not err in determining the statements in the complaint were protected by litigation privilege.**

The next issue is whether the district court erred when it determined DFF's defamation claims were barred by litigation privilege and subsequently dismissed DFF's complaint. DFF argues the district court erred because the statements about DFF were not reasonably related to Simplot's claims in the Washington litigation. DFF also contends litigation privilege was waived when attorneys for Simplot sent a copy of the complaint to NFCS. Simplot argues DFF failed to state a claim upon which relief could be granted because the statements in the Washington litigation complaint were protected by the absolute litigation privilege and the privilege was not waived. For the reasons discussed below, the district court did not err in dismissing DFF's complaint because DFF's defamation action was barred by litigation privilege.

This Court has said "defamatory matter published in the due course of a judicial proceeding, having some reasonable relation to the cause, is absolutely privileged and will not support a civil action for defamation . . . ." *Richeson v. Kessler*, 73 Idaho 548, 551–52, 255 P.2d 707, 709 (1953). The privilege applies even if the defamatory statements were "made maliciously and with knowledge of its falsity." *Id.* at 552, 255 P.2d at 709. We have also stated that "[t]he term judicial proceeding is not restricted to trials, but includes every proceeding of a judicial nature before a court or official clothed with judicial or quasi judicial power." *Id.* at 551, 255 P.2d at 709.

Accordingly, for litigation privilege to apply, two requirements must be satisfied. Those two requirements are that (1) "the defamatory statement was made in the course of a proceeding" and (2) it "had a reasonable relation to the cause of action of that proceeding . . . ." *Weitz v.*

9

*Green*, 148 Idaho 851, 862, 230 P.3d 743, 754 (2010). When those two requirements are met, the "statement may not be used as the basis for a civil action for defamation." *Id.*

In this case, the district court found that the parties did not dispute that the statements made in the Washington complaint and amended complaint were part of a judicial proceeding. DFF does not dispute this on appeal. Thus, the only remaining issue is whether the second prong of the litigation privilege inquiry is satisfied; that is, whether the defamatory statement "had a reasonable relation to the cause of action of that proceeding . . . ." *Weitz*, 148 Idaho at 862, 230 P.3d at 754; *see also Richeson*, 73 Idaho at 551–52, 255 P.2d at 709.

This Court has consistently indicated that litigation privilege should broadly apply. The policy for such broad application, this Court explained, is that, "[litigation] privilege is predicated on the long-established principle that the efficient pursuit of justice requires that attorneys and litigants must be permitted to speak and write freely in the course of litigation without the fear of reprisal through a civil suit for defamation or libel." *Taylor v. McNichols*, 149 Idaho 826, 836, 243 P.3d 642, 652 (2010). "[I]f any circumstances would support a finding that attorney actions are pertinent to litigation then absolute immunity should protect the attorney." *Id.* at 841, 243 P.3d at 65 (citing *Singh v. HSBC Bank USA*, 200 F. Supp.2d 338, 340 (S.D.N.Y.2002)). This Court went on to say that "[p]roceedings connected with judicature of the country are so important to the public good it is only in extreme cases and circumstances that a libelous publication in a judicial proceeding can be used as the basis for damages in a libel suit." *Richeson*, 73 Idaho at 552, 255 P.2d at 709.

In applying litigation privilege, this Court has consistently applied the privilege broadly to statements made in the course of judicial proceedings when there is some relation to the cause of action. *See id.* at 551–52, 255 P.2d at 709 ("defamatory matter published in the due course of a judicial proceeding, having some reasonable relation to the cause, is absolutely privileged and will not support a civil action for defamation."); *Weitz*, 148 Idaho at 863, 230 P.3d at 755 ("the finding of slander of title in this case was premised upon a statement made in the complaint, a necessary first step in litigation, where such statement was related to the underlying claim against Respondents, that statement is deemed immune."); *Taylor*, 149 Idaho at 837, 243 P.3d at 653 (stating that actions or communications made by an attorney in the course of representing a client are presumed to be barred by litigation privilege).

10

Other states have also broadly applied litigation privilege and broadly determine whether a defamatory statement made in a judicial proceeding is reasonably related to the proceeding. "The pertinency . . . required is not a technical legal relevancy, . . . but rather a general frame of reference and relationship to the subject matter of the action." *Williams v. Kenney*, 877 A.2d 277, 288 (App. Div. 2005) (citation omitted). "Relevancy usually is interpreted liberally . . . ." *Id.* (citation omitted). The Supreme Court of Minnesota explained, "we do not determine whether a statement is relevant by asking whether [the] statements are 'legally relevant'. . . . Rather, we look to see if the statement has a connection to the case before the court, keeping in mind that any doubts about the relevance of the statement are resolved in favor of relevancy and pertinency." *Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, 308 (Minn. 2007); *see also Ching v. Valencia*, 118 Haw. 521, 1 n.6, 193 P.3d 437 (2008) ("[T]he protection is complete irrespective of the motive prompting the use of the words or writings, but the privilege does not extend to matters having *no* materiality or pertinency to the question involved in the suit.") (emphasis added) (citation omitted); *McNeal v. Allen*, 95 Wash. 2d 265, 267, 621 P.2d 1285, 1286 (1980) ("Allegedly libelous statements, spoken or written by a party or counsel in the course of a judicial proceeding, are absolutely privileged if they are pertinent or material to the redress or relief sought, whether or not the statements are legally sufficient to obtain that relief."); *DeBry v. Godbe*, 1999 UT 111, ¶ 16, 992 P.2d 979, 984 (1999) ("A statement need not be relevant or pertinent to the judicial proceeding from an evidentiary point of view for the privilege to apply.").

The Second Restatement of Torts further emphasizes the low bar to invoking litigation privilege and the breadth with which the privilege applies. It states that attorneys are "absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Restatement (Second) of Torts § 586 (1977). It goes on to say:

> A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

Restatement (Second) of Torts § 587 (1977). Importantly, the Restatement does not say privilege is limited to defamatory matters about other parties; rather, it says only "another." Restatement (Second) of Torts §§ 586, 587 (1977).

Comment (c) to the Restatement clarifies what it means to have a "relation" to the proceeding. It states:

> The privilege stated in this Section is confined to statements made by an attorney while performing his function as such. Therefore it is available only when the defamatory matter has some reference to the subject matter of the proposed or pending litigation, although it *need not be strictly relevant* to any issue involved in it. Thus the fact that the defamatory publication is an unwarranted inference from the evidence is not enough to deprive the attorney of his privilege. . . . . On the other hand, the privilege does not cover the attorney's publication of defamatory matter that has no connection whatever with the litigation.

Restatement (Second) of Torts § 586 (1977) cmt. (c) (emphasis added). Thus, the Restatement emphasizes that a defamatory statement need only "some relation to the proceeding" and "need not be strictly relevant to the issue involved" for litigation privilege to apply. *Id.* And only when the "defamatory matter . . . has no connection whatever with the litigation" will the privilege not apply. *Id.*

Despite the broad application of litigation privilege, DFF argues that because it was not a party to the Washington litigation, the litigation privilege should not bar its defamation action. This argument is unpersuasive. As discussed, the relevant inquiry for determining whether litigation privilege applies is not whether one is a party to litigation, but rather, whether the statement concerning the party "had a reasonable relation to the cause of action of that proceeding . . . ." *Weitz*, 148 Idaho at 862, 230 P.3d at 754; *see also Richeson*, 73 Idaho at 551–52, 255 P.2d at 709. Accordingly, DFF's arguments that relate to the fact that DFF was not a party to the Washington litigation are misplaced. Instead, the inquiry is whether the statements about DFF in the Washington complaint were reasonably related to that litigation. For the reasons discussed below, we determine that the district court correctly held that the statements about DFF were reasonably related to the Washington litigation.

First, DFF argues its defamation claim should not have been dismissed on a 12(b)(6) motion to dismiss because Simplot did not file an answer asserting litigation privilege as an affirmative defense. Moreover, DFF argues that, because the Washington complaint was not to be considered on the 12(b)(6) motion, the district court erred in determining litigation privilege

12

applied based solely off of DFF's complaint. We disagree. While it is true a plaintiff is not required to plead around affirmative defenses, "[a] complaint is subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on the face of the complaint itself." *Gardner v. Hollifield*, 96 Idaho 609, 611, 533 P.2d 730, 732 (1975); *Hammer v. Ribi*, 162 Idaho 570, 575, 401 P.3d 148, 153 (2017). And while it is true the district court needed to consider the nature of the Washington litigation in order to determine if the statements about DFF were reasonably related to that litigation, it was able to do so in this case because DFF included all relevant portions of the Washington complaint in its complaint. In its memorandum decision, the district court determined the statements about DFF were reasonably related to the Washington litigation stating:

> [F]rom only the language in the Complaint, the Court can determine that the Washington Litigation was brought by Simplot against a Defendant in the Washington Litigation—Frank Tiegs—and two businesses he owned. The Washington Litigation was filed as means for a "business divorce" between Simplot and Frank Teigs. The Complaint also makes clear that Frank Tiegs is the president of and an affiliate of Dickinson Frozen Foods, the Plaintiff in this action. Because the statements in the Washington Complaint and Amended Complaint were reasonably related to Frank Tiegs's business operations, which include DFF, the Court finds that statements were reasonably related to the Washington Litigation. Therefore, the Court finds Plaintiff's defamation per se claims are barred by the litigation privilege.

On reconsideration, the court reiterated that it "determined the statements were reasonably related to the litigation based on [DFF's] facts in its Complaint." Thus, based on the facts of this case, the district court did not err in determining litigation privilege applied based solely on DFF's complaint, as DFF's complaint contained the relevant portions of the Washington complaint.

As noted, this Court's case law requires only that the district court determine that the defamatory statements "had a reasonable relation to the cause of action of that proceeding . . . ." *Weitz*, 148 Idaho at 862, 230 P.3d at 754. Here, the district court was able to make that determination on the face of DFF's complaint based on the information DFF included about Tiegs and the Washington litigation. The case law does not require a specific analysis of each cause of action in the Washington litigation, rather it requires only that the "defamatory matter . . . hav[e] some reasonable relation to the cause . . . " in order to be privileged. *Richeson*, 73 Idaho at 551–52, 255 P.2d at 709. While DFF contends that litigation privilege should not have been determined on a Rule 12(b)(6) motion to dismiss, this Court has done so before. *See Taylor*, 149

Idaho at 845, 243 P.3d at 661 (affirming district court's grant of a 12(b)(6) motion to dismiss in part because some claims were barred by litigation privilege). The district court correctly concluded that statements about DFF, one of Tiegs's other businesses, were relevant to Tiegs's business practices which were part of the Washington litigation.

Next, DFF argues the district court erred because it "reached its incorrect legal conclusions by reference to the Tiegs/DFF affiliate relationship." Along these same lines, DFF argues that because some of the direct claims in the Washington litigation were dismissed as duplicative of the derivative claims, it shows the statements about DFF had nothing to do with federal litigation. These arguments are unavailing. As noted above, the district court determined the Washington litigation related to a "business divorce" between Simplot and entities owned by Tiegs and the statements about DFF considered business practices by Tiegs, and thus the statements were reasonably related to the Washington litigation. The district court did not say it was finding litigation privilege solely because of the "Tiegs/DFF affiliate relationship." Rather, it analyzed why statements about Tiegs's business practices at DFF were reasonably related to Simplot's "business divorce" from Tiegs's other businesses. As to the claims that were dismissed, the district court noted DFF has cited to no rule that says litigation privilege does not apply to claims a court dismisses. Indeed, none of the case law cited above indicates that whether a case is dismissed or not bears on the application of privilege. Thus, the district court did not err.

Lastly, DFF argues the district court erred when it determined litigation privilege was not waived when attorneys for Simplot sent a copy of the complaint to NFCS. The district court stated that NFCS was a lender to Pasco, and Simplot is a 50 percent owner of Pasco, so publication of the complaint to NFCS was reasonably related to the Washington litigation and the attorneys were acting within the scope of their employment when they published the complaint. Thus, the court stated that publication of the complaint to NFCS was protected by litigation privilege. The district court did not err.

In *Taylor*, this Court held that "litigation privilege is an absolute privilege, which only applies when a specific condition precedent is met, namely, that an attorney is acting within the scope of his employment, and not solely for his personal interests." *Taylor*, 149 Idaho at 841, 243 P.3d at 657. And, "where an attorney is sued by the current or former adversary of his client, as a result of actions or communications that the attorney has taken or made in the course of his

14

representation of his client in the course of litigation, the action is *presumed* to be barred by the litigation privilege." *Id.* at 841, 243 P.3d at 657 (emphasis added). The exception to this rule applies only if "plaintiff pleads facts sufficient to show that the attorney has engaged in independent acts, that is to say acts outside the scope of his representation of his client's interests, or has acted solely for his own interests and not his client's." *Id.* Following the reasoning in *Taylor*, here, if the attorneys for Simplot were acting within the scope of their employment when they sent the complaint to NFCS, litigation privilege bars DFF's defamation action. *Id.* Simplot's attorneys were acting within their scope of representation and not for their own interests when they sent the complaint to NFCS, a lender to Pasco, as there is no evidence to the contrary.

In sum, DFF has conceded the first element of litigation privilege; that is, the allegedly defamatory statements were made in the course of a judicial proceeding because they were in the complaint filed in the Washington litigation. As to the second element, we determine the district court did not err in finding the statements were reasonably related to the Washington litigation and are protected by litigation privilege. As analyzed above, the privilege is broadly applied, and here, the statements concerned Tiegs's business practices, which were in dispute in the Washington litigation. Accordingly, the district court did not err in dismissing DFF's complaint.

**C.     The district court did not abuse its discretion in denying DFF's motions for leave to amend its complaint.**

After the district court dismissed DFF's defamation per se claims, it struck as moot DFF's motion for leave to amend its complaint. In June 2017, DFF filed a motion for reconsideration of the dismissal, and concurrently filed a second motion for leave to amend its complaint. Between the two amended complaints, DFF added information that: Simplot's Washington state claims do not mention DFF, that DFF was not relevant to Simplot's derivative claims, that McKellar admitted to lacking knowledge about DFF, that Tiegs does not manage the day-to-day operations of DFF, and that NFCS loaned to Pasco, not Simplot directly. The district court addressed both the decision to strike the first motion as moot as well as the second motion for leave amend the complaint. In addressing DFF's first motion for leave to amend, the court affirmed that it would not have granted DFF's first motion for leave to amend. The court stated DFF did not add new information relevant to a valid claim and rather added more argument as to its existing claims, and the new argument did not impact the litigation privilege analysis. As to DFF's second motion for leave to amend, the court stated that litigation privilege still applied

15

and barred DFF's defamation claims. For the reasons discussed below, the district court did not abuse its discretion in denying DFF's motions for leave to amend its complaint.

As noted, "[a] district court's denial of a plaintiff's motion to amend their complaint is governed by an abuse of discretion standard of review." *Elliott v. Murdock*, 161 Idaho 281, 286, 385 P.3d 459, 464 (2016) (citation omitted). "Under Idaho law, motions for leave to amend pleadings are to be liberally granted. . . ." *Taylor*, 149 Idaho at 847, 243 P.3d at 663. However, "[i]n determining whether an amended complaint should be allowed, where leave of court is required under Rule 15(a), the court may consider whether the new claims proposed to be inserted into the action by the amended complaint state a valid claim." *Id.* (quoting *Black Canyon Racquetball Club, Inc. v. Idaho First Nat. Bank, N.A.*, 119 Idaho 171, 175, 804 P.2d 900, 904 (1991)).

A district court does not abuse its discretion in denying a motion for leave to amend a complaint when the district court determines the claims sought to be added are not valid. *Estate of Becker v. Callahan*, 140 Idaho 522, 528, 96 P.3d 623, 629 (2004). For example, in *Callahan*, the appellant moved for leave to amend his complaint to add two additional causes of action. *Id.* The district court addressed the validity of each proposed cause of action and determined neither would be valid. *Id.* Thus, the district court denied the motion for leave to amend. *Id.* This Court affirmed the district court's denial of the motion for leave to amend stating the district court did not abuse its discretion "because it recognized it could consider whether the proposed new claims were valid claims. The district court addressed on the record exactly why each of the proposed causes of action from the amended complaint were not valid." *Id.* Similarly, in *Taylor*, this Court affirmed the district court's denial of the appellant's motion for leave to amend his complaint, stating "[Appellants] proposed amended complaints set out the same causes of action as his original complaints . . . ." 149 Idaho at 847, 243 P.3d at 663. This Court said that because the appellant's "proposed amended complaints did not add any facts in support of his . . . causes of action raised in his original complaints . . . the district court acted within its discretion in denying [Appellant's] motions for leave to amend his complaints on the ground of futility." *Id.*

In contrast, if a complaint adds new claims that may be valid, a district court should grant leave to amend. *Savage v. Scandit Inc.*, 163 Idaho 637, 642–43, 417 P.3d 234, 239–40 (2018). In *Savage*, the appellant filed suit against her employer under the Idaho Wage Claim Act and seeking contractual damages. *Id.* at 640, 417 P.3d at 237. Later, the appellant moved for leave to

16

amend her complaint seeking to assert various equitable claims against her employer. *Id.* The district court denied the appellant's motion for leave to amend stating the amendment would not be able to show the appellant earned a commission, which was relevant to the contract dispute. *Id.* at 642–43, 417 P.3d at 239–40. This Court reversed the district court, stating, "[t]he amendments sought to add equitable claims that would prevent [Respondent] from claiming the contract was not booked until a later date. Because the amended complaint contained facts alleging the commission was due and owing at the time [Appellant] sought leave to amend, the amendment would not be futile." *Id.* at 643, 417 P.3d at 240.

DFF argues that this Court's language stating that motions for leave to amend should be "liberally granted" as well as this Court's decision in *Savage* demonstrate that the district court abused its discretion in denying DFF's motions for leave to amend. This argument is unavailing. While this Court generally states that "motions for leave to amend pleadings are to be liberally granted" this Court also states the district court may consider whether the claims in the amended complaint state a valid claim. *Taylor*, 149 Idaho at 847, 243 P.3d at 663; *Black Canyon Racquetball Club, Inc.*, 119 Idaho at 175, 804 P.2d at 904. Here, that is precisely what the district court did. In reaching its decision, the district court analyzed the new information asserted in the proposed amended complaints and determined neither proposed amended complaint contained facts that would alter the court's litigation privilege analysis. On reconsideration as to the first amended complaint, the court stated it did not err in denying DFF leave to amend, as nothing new was alleged that altered the court's determination that the defamation claim was barred by litigation privilege. In denying DFF's second motion for leave to amend, the court stated that,

> considering [DFF's] Second Proposed Amended Complaint, the litigation privilege applies and acts as an absolute bar to the defamation claims raised by the Plaintiff. Because the Court does not find Plaintiff set forth any valid claims that would survive a summary dismissal in the Second Proposed Amended Complaint, the Court DENIES the [DFF's] Second Motion to Amend Complaint.

Here, like in *Callahan* and *Taylor*, the district court considered DFF's proposed amended complaints to see if they contained a valid claim, determining they did not. In *Savage*, unlike here, the appellant alleged new equitable theories relevant to the underlying contract dispute. *Savage*, 163 Idaho at 642–43, 417 P.3d at 239–40. Here, DFF did not allege any new theories. Rather, it only alleged further arguments as to its defamation claim. The district court determined that DFF's defamation claim was still barred by litigation privilege, as DFF had not

17

asserted anything that would change the court's analysis. Accordingly, the district court did not abuse its discretion in denying DFF's motions for leave to amend its complaint.

**D.      The district court did not err in granting Simplot's motion for summary judgment on DFF's breach of contract claim.**

In August 2014, Simplot was experiencing a temporary shortage of potato shreds and was seeking to work with frozen food processors, including DFF, to cover the temporary shortage. A Simplot employee visited DFF's facility and signed the NDA at issue in this case. In DFF's complaint, in addition to its defamation claims, DFF also alleged a breach of contract claim against Simplot. DFF contended Simplot breached the NDA when it attached an audit report about DFF to its Washington litigation complaint and amended complaint, and subsequently sent both to NFCS. The district court stated that neither party disputed that the report Simplot attached to its complaints in the Washington litigation qualified as "Confidential Information" under the NDA. However, the parties disagreed as to whether the plain language of the NDA applied to the time-frame during which the disclosure occurred. The relevant terms of the NDA are as follows:

> This Nondisclosure Agreement ("Agreement") is entered into effective as of 8/15, 2014 (the "Effective Date"), by and between Dickinson Frozen Foods, Inc. ("DFF") and JR Simplo[t] ("Recipient"), for the purpose of protecting and preserving the confidential and/or proprietary nature of information to be disclosed or made available by DFF, to Recipient under this Agreement in connection with a proposed business relationship between Recipient and DFF. . . .
>
> **1. Confidential Information**
>
> "Confidential Information" means all information, whether written or oral, and in any form (including, without limitation, research and development, manuals, reports, designs, plans, processes, product listings and prices, product information, new product plans, sales and marketing plans and/or programs, pricing information, customer lists and other customer information, photographs, financial information and employee files or other employee information) relating to DFF's business which is disclosed by DFF, directly or indirectly to Recipient. Confidential Information may be furnished in any tangible or intangible form including, but not limited to, writings, drawings, computer tapes and other electronic media, samples, and verbal communications.
>
> **2. Use of Confidential Information**
>
> The parties agree to use the Confidential Information received pursuant to this Agreement solely for the purpose of engaging in discussions relating to a possible vendor relationship.
>
> **4. Obligation of Confidentiality**

> Recipient agrees that, for a period of three (3) years from receipt of Confidential Information hereunder, it shall hold in confidence and not possess or use (except to evaluate the proposed business relationship) or disclose any Confidential Information. . . . The Confidential Information may be disclosed only to employees or contractors of Recipient with a "need to know" who are instructed and agree not to disclose the Confidential Information and not use the Confidential Information for any purpose, except as set forth herein.

The district court granted Simplot's motion for summary judgment, determining the contract was unambiguous and applied only to confidential information Simplot received in connection with the proposed business relationship. The district court stated the disclosure in the Washington litigation was not a breach of the NDA because the disclosure occurred two years after the parties entered a formal business relationship and were no longer negotiating a proposed business relationship. For the reasons discussed below, the district court did not err.

"The interpretation of a contract begins with the language of the contract itself." *Indep. Lead Mines v. Hecla Mining Co.*, 143 Idaho 22, 26, 137 P.3d 409, 413 (2006) (citing *Albee v. Judy*, 136 Idaho 226, 230, 31 P.3d 248, 252 (2001)). This Court has stated it "will enforce the language of a contract where that language is plain and unambiguous." *Steel Farms, Inc. v. Croft & Reed, Inc.*, 154 Idaho 259, 264, 297 P.3d 222, 227 (2012) (citing *Pinehaven Planning Bd. v. Brooks*, 138 Idaho 826, 829, 70 P.3d 664, 667 (2003)). "If the terms of the contract are clear and unambiguous, the meaning and legal effect of the contract are questions of law which must be determined from the plain meaning of the words used." *Indep. Lead Mines*, 143 Idaho at 26, 137 P.3d at 413 (citation omitted). "If, however, the contract is deemed to be ambiguous, the interpretation of the contract document is a question of fact which focuses on the intent of the parties." *Id.* (citation omitted). "Whether the facts establish a violation of the contract is a question of law over which this Court exercises free review." *Id.* (quoting *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 606, 38 P.3d 1258, 1262 (2002)).

"A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical." *Phillips v. Gomez*, 162 Idaho 803, 807, 405 P.3d 588, 592 (2017). "[A] party's subjective intent is immaterial to the interpretation of the contract." *Id.* (quoting *J.R. Simplot Co. v. Bosen*, 144 Idaho 611, 614, 167 P.3d 748, 751 (2006)). "Instead, courts will give full 'force and effect to the words of the contract without regard to what the parties of the contract thought it meant or what they actually intended it to mean.'" *Id.* (quoting 17 Am. Jur. 2d Contracts § 347 (2004)).

For the reasons discussed, the district court did not err in determining that the plain language of the contract is unambiguous and does not apply to Simplot's disclosure of the audit report. The NDA states it is entered into for the "purpose of  protecting and preserving" information that is "confidential and/or proprietary"  that is disclosed by DFF to Simplot "in connection with *a proposed* business relationship" between DFF and Simplot. And, "[t]he parties agree to use the Confidential Information received pursuant to this Agreement solely for the purpose of engaging in discussions relating to *a possible* vendor relationship "Proposed" is defined as: "to put forward for consideration, discussion, or adoption." Webster's II New Riverside Dictionary 944 (1988). "Possible" is defined as: "capable of existing, happening, or being true . . ." and "capable of taking place or being done . . . ." Webster's II New Riverside Dictionary 918 (1988). Applying the relevant definitions, a plain reading of the language of the NDA indicates the NDA applies to information, disclosed by DFF to Simplot, in connection with consideration or discussion of a business relationship or a relationship that is capable of happening.

The plain language does not, as DFF contends, extend to apply "even after the formation of proposed business agreements." Nor does the NDA contemplate multiple business relationships, as it indicates it applies to "a" proposed business relationship or "a" possible vendor relationship. Here, after the NDA was signed, the parties entered into a three month potato shred deal in August 2014. Once that deal was entered into, the NDA was no longer applicable because the parties would no longer be negotiating "a" "proposed" or "possible" relationship. If the parties intended the NDA to apply to established relationships, multiple relationships, or future relationships, it could have stated that in the plain language. And, as DFF prepared the contract, the contract must be construed against it. *See J.R. Simplot Co. v. Bosen*, 144 Idaho 611, 616, 167 P.3d 748, 753 (2006).

However, DFF points to the provision in the NDA that states Simplot "agrees that, for a period of three (3) years from receipt of Confidential Information hereunder, . . ." and argues the three year term clearly meant the parties intended that *all* information received by Simplot from DFF would be kept confidential for three years. This argument is unavailing.  As noted above, the express purpose of the NDA indicates it protects information related to *a proposed* business relationship or *a possible* vendor relationship. The agreement does not state it will apply to anything other than a proposed or possible relationship. And, the three year provision contains

20

the word "hereunder" indicating the information to be kept confidential for three years is that information Simplot receives pursuant to a proposed or possible business relationship. DFF's interpretation reads the three year provision in isolation of the other terms of the NDA. As this Court has said, "[i]n determining the intent of the parties, this Court must view the contract as a whole." *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2005).

The parties agree that at the time Simplot disclosed the audit report, DFF and Simplot had already formed a business relationship. The parties were no longer in the stage of a "proposed" or "possible" relationship. Therefore, Simplot did not breach the NDA when it attached a copy of the audit report to its complaint in the Washington litigation. While DFF argues that there are disputes of material fact as to the terms of the contract, DFF's arguments are really arguments that the contract is ambiguous. As stated above, the NDA is not ambiguous. Accordingly, the district court's grant of summary judgment is affirmed.

**E.      Attorney fees below and on appeal.**

The district court awarded attorney fees and some costs to McKellar, Thompson, and Simplot. Yarmuth did not seek attorney fees. The basis for the district court's award was Idaho Code section 12-120(3). The district court stated it was awarding fees to McKellar, Thompson, and Simplot because "gravamen" of the "defamation claim was fundamentally related to a business relationship/commercial transaction between DFF and Simplot." The district court also awarded fees to Simplot for defending against DFF's breach of contract claim. DFF argues the district court erred in awarding fees based on a commercial transaction, and alternatively, by not apportioning Simplot's attorney fees. As discussed below, the district court erred in awarding attorney fees for the defamation claim based on Section 12-120(3).

As an initial matter, the district court declined to award fees based on Section 12-121 and no party has appealed that decision. Therefore, the only issue is whether the district court erred when it awarded attorney fees pursuant to Section 12-120(3), which provides:

> (3) In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

I.C. § 12-120.

21

This Court has said that "whether a party can recover attorney fees under Idaho Code section 12-120(3) depends on whether the gravamen of a claim is a commercial transaction." *Stevens v. Eyer*, 161 Idaho 407, 410, 387 P.3d 75, 78 (2016), *reh'g denied* (Oct. 6, 2016) (quoting *Sims v. Jacobson*, 157 Idaho 980, 985, 342 P.3d 907, 912 (2015)). "A gravamen is 'the material or significant part of a grievance or complaint.'" *Id.* Courts will analyze the gravamen of a claim on a claim by claim basis. *Id.* "To be the gravamen of a lawsuit, '(1) there must be a commercial transaction that is integral to the claim; and (2) the commercial transaction must be the basis upon which recovery is sought.'" *Simono v. House*, 160 Idaho 788, 792, 379 P.3d 1058, 1062 (2016) (quoting *Garner v. Povey*, 151 Idaho 462, 469, 259 P.3d 608, 615 (2011)).

Section 12-120(3) does not "prohibit[] a fee award for a commercial transaction that involves tortious conduct . . . ." *Stevens*, 161 Idaho at 410, 387 P.3d at 78 (quoting *Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 728, 152 P.3d 594, 599 (2007). However, "even though fees are available in cases involving a tort claim, a commercial transaction between the parties to the lawsuit must form the basis of the claim." *Printcraft Press, Inc. v. Sunnyside Park Utilities, Inc.*, 153 Idaho 440, 461, 283 P.3d 757, 778 (2012); *see also Bridge Tower Dental, P.A. v. Meridian Computer Ctr., Inc.*, 152 Idaho 569, 575, 272 P.3d 541, 547 (2012).

In *Stevens*, this Court quoted its decision in *Bridge Tower Dental, P.A.*, for "an example of a commercial transaction that gave rise to a tort claim." *Stevens*, 161 Idaho at 411, 387 P.3d at 79 (citing *Bridge Tower Dental, P.A.*, 152 Idaho at 575, 272 P.3d at 547). In *Bridge Tower Dental, P.A.*, a dental practice purchased a computer hardware system that came with a three year warranty contract. 152 Idaho at 570, 272 P.3d at 542. The server began experiencing problems and, in attempting to repair it, the computer center mistakenly erased all of the dental practice's data. *Id.* The dental practice sued for "breach of contract and negligence under the law of bailment." *Id.* This Court went on to state "that the negligence claim arose out of a commercial transaction[.]" *Id.* at 575, 272 P.3d at 547. This Court stated:

> This Court finds that the lower court was correct in finding that the bailment, whether express or implied, constituted a commercial transaction which served as the basis upon which Bridge Tower was trying to recover. A commercial transaction formed the gravamen of the lawsuit because the negligence claim arose out of the commercial transaction between Bridge Tower and Meridian Computer to replace the failing hard drive under the warranty agreement.

*Stevens*, 161 Idaho at 411, 387 P.3d at 79 (quoting *Bridge Tower Dental, P.A.*, 152 Idaho at 575, 272 P.3d at 547).

22

Similarly, in *Stevens*, the appellants entered into a Log Purchase Agreement with the respondent. *Id.* at 408–09, 387 P.3d at 76–77. Later, the loggers mistakenly cut timber on the neighboring land to the appellants. *Id.* at 409, 387 P.3d at 77. The neighbors sued the appellants for timber trespass and the appellants brought a third party action against the respondents for breach of an assumed duty. *Id.* The respondents prevailed and were awarded fees under Section 12-120(3). *Id.* This Court affirmed the award of fees under Section 12-120(3) stating "a commercial transaction was integral to the [appellants] assumed duty tort claim and constituted the basis of the [appellants] theory of recovery on that claim." *Id.* at 411, 387 P.3d at 79.

In this case, a commercial transaction was not integral to DFF's defamation claim, and the claim was not based on a commercial transaction. While it is true DFF and Simplot had a business agreement where Simplot purchased potato shreds from DFF, that agreement was not the gravamen of DFF's defamation claim. In *Bridge Tower Dental, P.A.* and *Stevens*, the plaintiffs would not have had a cause of action absent the underlying contract and commercial transaction. In *Bridge Tower Dental, P.A.*, the tort action was based on the underlying warranty contract. 152 Idaho at 575, 272 P.3d at 547. In *Stevens*, the tort action was based on an agreement to sell timber. 161 Idaho at 411, 387 P.3d at 79. Here, DFF could have brought its defamation claim against Simplot even if the two entities had never done business together before and even if the entities had no commercial agreement. DFF's defamation allegations were unrelated to its business contract with Simplot. Accordingly, the gravamen of DFF's defamation claim is not based on a commercial transaction, and therefore, the district court abused its discretion in awarding fees on the defamation claim.

As to DFF's breach of contract claim, attorney fees were properly awarded pursuant to Section 12-120(3) as the gravamen of DFF's claim was the contract (NDA) between the parties. Indeed, DFF concedes "Simplot may have a legitimate commercial basis for defending against Count II breach of the [NDA]." However, DFF argues the district court erred by not apportioning Simplot's fees between the defamation and breach of contract claims. This Court has said, [w]here fees were not apportioned between a claim that qualifies under I.C. § 12-120(3) and one that does not, no fees are to be awarded." *Rockefeller v. Grabow*, 136 Idaho 637, 645, 39 P.3d 577, 585 (2001). Because the district court determined fees were appropriate under Section 12-120(3) for the defamation claim, it did not apportion the fees between the two and rather considered the hours billed for each claim based on "reasonability." In this case, because an

award of attorney fees was not appropriate for the defamation claim, we remand so the attorney fee award can be apportioned and awarded to Simplot only for its defense of the breach of contract claim.

DFF, Simplot, and Thompson all request attorney fees on appeal. Based on the above, DFF is not the prevailing party on appeal, and therefore is not entitled to attorney fees on appeal. Simplot and Thompson both request attorney fees on appeal pursuant only to Section 12-120(3). Because we have determined the defamation claim does not support an award of attorney fees under Section 12-120(3), Thompson is not entitled to attorney fees. Unlike Simplot, which defended against a breach of contract claim, Thompson defended only against the defamation claim. Therefore, Thompson is not entitled to attorney fees on appeal. Similarly, Simplot is not entitled to attorney fees on appeal as to the defamation claim. However, because Simplot prevails on appeal as to the breach of contract claim, Simplot is awarded its attorney fees as to that defense pursuant to Section 12-120(3). *See Stevens*, 161 Idaho at 413, 387 P.3d at 81 (stating that if a claim arises from a commercial transaction, the prevailing party on appeal is entitled to attorney fees); *see also Bridge Tower Dental, P.A.*, 152 Idaho at 575, 272 P.3d at 547.

## V.    CONCLUSION

First, we do not have personal jurisdiction over Yarmuth or Thompson and accordingly do not consider DFF's claims against Yarmuth or Thompson. Second, the district court's dismissal of DFF's defamation claim against Simplot is affirmed as the action is barred by litigation privilege. Third, the district court did not abuse its discretion in denying DFF's motions for leave to amend its complaint. Fourth, the district court's determination that Simplot did not breach the NDA is affirmed. Lastly, the district court's award of attorney fees for the defamation action is reversed and remanded for an apportionment of fees as to the defense of the breach of contract claim only.  Simplot is awarded costs on appeal, and attorney fees as to its defense of the breach of contract claim only.

Costs are awarded to Thompson Coburn, LLP and Yarmuth Wilsdon, PLLC.

Justices BEVAN, STEGNER, MOELLER and GRATTON, Pro Tem, **CONCUR.**

24