# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49562

YELLOWSTONE LOG HOMES, LLC, )
an Idaho limited liability company, )
)
    Plaintiff-Appellant- )
    Cross Respondent, )     Rexburg, June 2023 Term
)
v. )     Opinion Filed: December 20, 2023
)
CITY OF RIGBY, a municipal )     Melanie Gagnepain, Clerk
corporation in the State of Idaho, )
)
    Defendant-Respondent- )
    Cross Appellant. )

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Jefferson County. Stevan H. Thompson, District Judge.

The order of the district court is reversed, and the case is remanded.

Nelson Hall Parry Tucker, PLLC, Idaho Falls, for Plaintiff-Appellant-Cross Respondent, Yellowstone Log Homes, LLC. Weston S. Davis argued.

Hall Angell & Associates, LLP, Idaho Falls, for Defendant-Respondent-Cross Appellant, City of Rigby. Sam Angell argued.

—————————————

STEGNER, Justice.

This case involves an alleged tort arising from the breach of a sewer lateral. Yellowstone Log Homes, LLC ("Yellowstone"), owns a rental home in Rigby, Idaho, that suffered extensive damage after BorTek Utilities and Construction, LLC ("BorTek"), bored through a lateral sewer line connected to Yellowstone's rental home. Prior to the project, an agent of the City of Rigby ("the City") marked certain nearby utilities; however, it failed to mark the service lateral sewer pipe connecting to Yellowstone's rental property. As a result of the severing of the sewer lateral, Yellowstone's property sustained significant damage. After the incident, Yellowstone contacted the City, demanding that it take responsibility for the damages sustained and to compensate Yellowstone for those damages. The City refused. Yellowstone then filed suit against the City

1

alleging negligence *per se* and common law negligence for the City's failure to have the service lateral marked. Both parties subsequently filed cross-motions for summary judgment.

The district court concluded Yellowstone did not have standing under the Idaho Underground Facilities Damage Prevention Act (Idaho Code sections 55-2201 through 55-2212) ("the Act"), which creates a cause of action for excavators and underground facility owners, but not explicitly for end users. The district court determined that even if Yellowstone had standing to pursue its claims, it had failed to prove the City breached any duty owed to Yellowstone. As a result, the district court granted the City's motion for summary judgment. At the same time, the district court denied the City's request for attorney fees. Yellowstone appeals the district court's grant of summary judgment to the City and the denial of summary judgment to Yellowstone. The City cross-appeals the district court's denial of its request for attorney fees. For the reasons discussed below, we reverse the granting of summary judgment and remand the case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case began in spring 2020, when Direct Communications Rockland, Inc. ("Direct Comm"), contacted BorTek, a local excavation company, to bore through ground along Highway 48 in the City and "install a fiber communications line on behalf of [Direct Comm]." Prior to beginning the project, BorTek contacted Idaho Dig Line[1] to begin the process of marking underground facilities, such as sewer pipes.

Yellowstone owned a rental home near the proposed excavation project ("the Property"). Before BorTek began excavating, "Rigby [through its agent] marked utilities in the area, but did not mark [Yellowstone's] service lateral" that connected the home to the City's main sewer system. During the project, "BorTek drilled through the service lateral leading to [Yellowstone]'s property and placed the fiber line in the service lateral obstructing the flow of sewage." Yellowstone alleged that "[t]his breach of the sewer pipe leading to [the Property] occurred in a public right-of-way." As a result of the obstructed lateral, raw sewage backed up into the Property, causing extensive damage and rendering the Property uninhabitable.

---

[1] Idaho Dig Line is an Idaho corporation that is responsible for notifying underground facility owners, such as the City, of proposed excavation projects. The purpose of the notification is "to seek [underground facility owners'] assistance in locating their respective subsurface facilities[,]" so those facilities may be marked before underground digging begins.

After the sewer line was breached and the Property sustained significant damage, Yellowstone contacted the City, demanding that it repair the sewer line and compensate Yellowstone for the damages it had sustained. The City refused and recommended that Yellowstone contact Direct Comm, the company with which BorTek had contracted.

In June 2020, Yellowstone again demanded that the City "accept liability for payment of the cost of the diagnosis and repair of the line as well as the restoration of the residence[.]" The City once again denied that it had any duty to mark service lines to Yellowstone's property. In turn, Yellowstone notified the City that it intended to file a tort claim.

Yellowstone filed a Notice of Tort Claim with the City advising it of Yellowstone's intent to seek damages it sustained because of BorTek's breaching of the sewer line. The City refused to accept responsibility. As a result, Yellowstone sued the City, alleging negligence *per se* and common law negligence. Yellowstone sought no less than $30,797.33 in damages. The City answered and asserted several affirmative defenses, including that Yellowstone had "failed to comply with requirements of the Idaho Tort Claims Act[,] . . . failed to exhaust [its] administrative remedies[,]" and did not have standing to sue under the relevant provisions of the Idaho Code.

The City later moved for summary judgment, reiterating the defenses identified in its answer. Yellowstone also moved for summary judgment, arguing that Idaho Code section 55-2202 imposed a duty on the City to mark underground sewer lines in a public right-of-way, which the City had not done. Yellowstone argued alternatively that if the sewer line was "identified but unlocatable[,]" then the City had a duty to use the "'best information available' in order to mark the lines . . . ." Yellowstone argued that the City had breached those duties when it failed to mark the sewer lateral. Both parties requested attorney fees.

The district court concluded that Yellowstone did not have standing to sue because Yellowstone did not have any preexisting rights as provided by Idaho Code section 55-2211(5). Instead, the district court determined that BorTek was the only entity with "the 'right to receive compensation from the owner of the underground facility for costs incurred if the owner of the underground facility does not locate its facility[.]'" The district court then concluded that even if Yellowstone had standing to sue the City, summary judgment for the City would still be proper because there was no evidence that the City had breached a duty to "1) locate and mark its locatable service laterals with reasonable accuracy or 2) . . . locate and mark identified but unlocatable service laterals with the best information available to the owner of the underground facilities."

3

Alternatively, the district court found that the City's inability to locate the service lateral qualified as a discretionary function, which entitled the City to statutory immunity. Ultimately, the district court concluded that BorTek, not the City, was the proper entity for Yellowstone to have sued. The district court explained: "It would be nearly impossible for the [c]ourt or a jury to accurately assess the elements of causation and damages without BorTek as a party which again bolsters the argument that the statute only provides a cause of action between excavators and owners." As a result of its analysis, the district court granted summary judgment to the City and denied Yellowstone's motion for summary judgment. The district court then entered a judgment dismissing the case with prejudice.

Following the entry of judgment, the City filed a memorandum of costs and fees as the prevailing party pursuant to Idaho Code sections 12-120(1) and 55-2207(4). Yellowstone filed a motion for reconsideration and a memorandum opposing the City's request for attorney fees. The district court denied Yellowstone's motion to reconsider.  The district court also denied the City's request for attorney fees under section 55-2207(4) after concluding that statute limits the recovery of attorney fees to actions *initiated* under section 55-2207, which Yellowstone could not do because it was not an underground facility owner, the City was. The district court also declined to award attorney fees under Idaho Code section 12-120(1) after determining that Idaho Code section 55-2211(5), which grants the court discretion to award attorney fees under the Act, was "more specific and newer than [Idaho Code section] 12-120(1)[;]" thus, Idaho Code section 55-2211(5) was controlling. However, the district court noted that even if the City had cited the correct statute, the district court would not have exercised its discretion to award fees in this matter. The district court awarded costs to the City as the prevailing party.

Yellowstone appeals the district court's denial of its motion for summary judgment and the district court's grant of the City's motion for summary judgment, Yellowstone's subsequent motion to reconsider, and the district court's award of costs to the City. The City cross-appeals the district court's denial of its request for attorney fees.

## II. STANDARDS OF REVIEW

In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Purdy v. Farmers Ins. Co. of Idaho*, 138 Idaho 443, 445, 65 P.3d 184, 186 (2003). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the

4

non-moving party. *Id.* Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id.*

*Estate of Becker v. Callahan*, 140 Idaho 522, 525, 96 P.3d 623, 626 (2004).

"This Court applies a de novo standard of review to questions of law." *Siercke v. Siercke*, 167 Idaho 709, 713, 476 P.3d 376, 380 (2020) (citing *Zeyen v. Pocatello/Chubbuck Sch. Dist. No. 25*, 165 Idaho 690, 694, 451 P.3d 25, 29 (2019)).

*Ware v. City of Kendrick*, 168 Idaho 795, 798, 487 P.3d 730, 733 (2021).

This Court reviews awards of attorney fees and costs under an abuse of discretion standard. *Dickinson Frozen Foods, Inc. v. J.R. Simplot Co.*, 164 Idaho 669, 676, 434 P.3d 1275, 1282 (2019) (internal quotation marks and citation omitted). When reviewing such an award for an abuse of discretion, the inquiry is "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Id.* at 675, 434 P.3d at 1281 (alteration in original) (internal quotation marks and citation omitted).

## III. ANALYSIS

### A. The district court incorrectly concluded Yellowstone did not have standing to bring its lawsuit.

Yellowstone first argues that the district court erred in concluding that it did not have standing to assert a claim of negligence *per se* under the Act. The district court determined that section 55-2205(2) creates a cause of action only "between excavators and the underground facility owner," and that since Yellowstone, an "end user," is neither an excavator nor an underground facility owner, the Act does not afford Yellowstone standing to seek recovery.

On appeal, Yellowstone does not dispute the district court's classification of it as an end user. Instead, Yellowstone argues that "[t]he Act does not preclude the standing of the public and end users" because several subsections of the Act acknowledge end users and their rights under the Act. Yellowstone maintains the district court's interpretation of Idaho Code section 55-2205(2) is too narrow, and the entire Act must be construed when determining whether an end user may

5

sue an underground facility owner, pursuant to the Act. We agree with Yellowstone's interpretation of the Act.

The district court focused on the language in Idaho Code section 55-2205(2)(a), which states: "*Excavators* shall have the right to receive compensation from the owner of the underground facility for costs incurred if the owner of the underground facility does not locate its facilities in accordance with this chapter." (Italics added.) Under this provision, BorTek, as the excavator, has a clear cause of action to recover from the City, the owner of the underground facility, for the City's failure to locate the service lateral. However, BorTek has not sustained damages and, therefore, has no right to recover against the City for the City's alleged failure to adequately mark the service lateral. The district court determined that the existence of this provision of the Act was enough to bar Yellowstone, an end user, from suing the City for the harm it sustained because of the City's failure to locate the service lateral in a public right-of-way.

We agree with the district court that there is no provision in the Act that creates a private right of action between end users and underground facility owners. However, the district court's analysis incorrectly focuses on whether a private right of action was created to impart standing. We have previously explained that "'[s]tanding is a preliminary question to be determined by this Court before reaching the merits of the case.' The inquiry 'focuses on the party seeking relief and not on the issues the party wishes to have adjudicated.'" *State v. Philip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015) (quoting *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002) (alteration original to *Philip Morris*)). In this case, neither party disputes the justiciability of the matter. Indeed, the lack of a private right of action in the Act does not eliminate Yellowstone's remaining options for recovery. Rather, the question is whether Yellowstone was permitted to file a claim for negligence *per se* in reliance on the Act.

Yellowstone is among those recognized as being within the intended coverage of the Act. The "Legislative intent" provision of the Act states:

> It is the intent of the legislature in enacting this chapter to create a system of stakeholder-driven education and enforcement addressing the *prevention of damage to underground facilities, to assign responsibilities for locating and keeping accurate records of underground facility locations, for preventing* and repairing *damage to existing underground facilities,* for collecting, storing, analyzing and disseminating data related to underground facility damage and excavator downtime events, and *for protecting the public health and safety from great personal harm including* death, *property damage and interruption in vital services caused by damage to existing underground facilities.*

6

I.C. § 55-2201 (italics added).

Thus, the Act is a legislative effort to prevent precisely what happened in this case. The Act requires that "the underground facility owner [the City] or the owner's agent shall locate and mark its locatable underground facilities with reasonable accuracy . . . by surface-marking the location of the facilities." I.C. § 55-2205(2). "If there are identified but unlocatable underground facilities, the owner of such facilities or the owner's agent shall locate and mark the underground facilities in accordance with the best information available to the owner of the underground facilities." *Id*. Given the duties imposed by the Act, we hold the district court erred in concluding Yellowstone lacked standing to bring a claim against the City as an underground facility owner. Accordingly, we hold the district court erred in finding that Yellowstone lacked standing to sue the City.

**B. The district court erred in granting summary judgment to the City.**

After concluding that Yellowstone was precluded from suing the City based on the Act, the district court went on to conclude that even if Yellowstone had standing to sue the City, summary judgment in the City's favor was still appropriate because: "There is no evidence that the City breached the duty to 1) locate and mark its locatable service laterals with reasonable accuracy or 2) . . . locate and mark identified but unlocatable service laterals with the best information available to the owner of the underground facilities. I.C. § 55-2205(2)." The district court concluded that there was "no evidence that the City had the information . . . to field-mark the service lateral within 24 inches in order to now classify the service lateral as locatable." The district court reached this decision even though it concluded the damage sustained by Yellowstone was "exactly the type of harm the statute was enacted to prevent." We agree with this statement of the district court.

This Court has previously recognized that when a complaint alleges negligence and negligence *per se*, the latter is simply one manner of proving negligence. *Brian & Christie, Inc. v. Leishman Elec., Inc*., 150 Idaho 22, 25 n.1, 244 P.3d 166, 169 n.1 (2010); *see also Steed v. Grand Teton Council of the Boy Scouts of Am., Inc*., 144 Idaho 848, 853, 172 P.3d 1123, 1128 (2007) ("Negligence *per se* is simply one manner of proving a common law negligence claim."). A party is not required to specifically plead negligence *per se* in its complaint when alleging a cause of action for negligence. *Obendorf v. Terra Hug Spray Co*., 145 Idaho 892, 898–99, 188 P.3d 834, 840–41 (2008). However, when a plaintiff does plead both negligence and negligence *per se*, a

plaintiff may only recover under one theory. *See Ahles v. Tabor*, 136 Idaho 393, 395, 34 P.3d 1076, 1078 (2001), *abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 265 P.3d 502 (2011) ("Once proved, however, negligence *per se* does not differ in its legal consequences from ordinary negligence.").

Here, Yellowstone asserted a claim for negligence *per se* under the Act and a claim for common law negligence. Although a plaintiff may only recover damages under one of these theories, Yellowstone made separate arguments and alleged the City owed a different duty under each claim. Accordingly, we will analyze each in turn.

### 1. *Negligence per se*

Yellowstone argues the duties set forth in the Act form the basis of a negligence *per se* claim because the Act imposed a duty upon the City to mark underground sewer lines in a public right-of-way with "reasonable accuracy" and the City did not do so. Yellowstone argues that the City breached this duty because it had the information it needed to locate the service lateral, but it chose not to maintain that information. Yellowstone also argues alternatively that if the sewer line was "identified but unlocatable[,]" then the City had a duty to use the "'best information available' to mark the lines. . . ." Yellowstone maintains that the City breached these statutory duties when it failed to mark the sewer lateral in the way that it did.

The district court found that Yellowstone had not brought forth evidence demonstrating that the City breached a duty assigned to it by the Act. Therefore, the district court concluded Yellowstone could not succeed on its claim for negligence *per se*.

A claim involving negligence *per se* has been described by this Court as follows:

> In order to replace a common law duty of care with a duty of care from a statute or regulation, the following elements must be met: (1) the statute or regulation must clearly define the required standard of conduct; (2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation must have been the proximate cause of the injury.

*Nation v. State, Dep't of Corr.*, 144 Idaho 177, 190, 158 P.3d 953, 966 (2007) (internal citations omitted). When the standard of care is defined by statute or regulation, "violations of such statutes and regulations may constitute negligence *per se*." *Id.* (internal quotation marks and citation omitted).

The Act requires that

> the underground facility owner [the City] or the owner's agent shall locate and mark its locatable underground facilities with reasonable accuracy, as defined in section 55-2202, Idaho Code, by surface-marking the location of the facilities. If there are identified but unlocatable underground facilities, the owner of such facilities or the owner's agent shall locate and mark the underground facilities in accordance with the best information available to the owner of the underground facilities.

I.C. § 55-2205(2). "Reasonable accuracy" is defined in Idaho Code section 55-2202 as: "(19) 'Reasonable accuracy' or 'reasonably accurate' means location within twenty-four (24) inches horizontally of the outside dimensions of each side of an underground facility." I.C. § 55-2202(19) (Supp. 2019). The City acknowledges it kept no record of service laterals; however, it contends that as a result it complied with the statutory obligation set out in the Act. We conclude that whether the City located the underground facilities with "reasonable accuracy" or used "the best information available" when it kept no record of the underground facility's sewer laterals is a question of fact as far as the first element of negligence *per se* is concerned.

The second element of negligence *per se* is whether a statute or regulation was intended to prevent the type of harm the act or omission caused. Here again, we must look to the statute for guidance. As previously noted, the "Legislative intent" provision of the Act speaks to this question:

> It is the intent of the legislature in enacting this chapter to create a system of stakeholder-driven education and enforcement addressing the *prevention of damage to underground facilities, to assign responsibilities for locating and keeping accurate records of underground facility locations, for preventing* and repairing *damage to existing underground facilities* for collecting, storing, analyzing and disseminating data related to underground facility damage and excavator downtime events, and *for protecting the public health and safety from great personal harm including* death, *property damage and interruption in vital services caused by damage to existing underground facilities.*

I.C. § 55-2201 (italics added). To be sure, Yellowstone's sewer lateral falls within the statutory definition of an "underground facility." *See* I.C. § 55-2202(24) ("'Underground facility' means any item buried or placed below ground for use in connection with the storage or conveyance of . . . sewage . . . and including, but not limited to, pipes, [and] sewers, . . . ."). There is no doubt the Act was intended to prevent the type of harm the City's acts or omissions caused. As a result, the second element of negligence *per se* has therefore been met.

The third element of negligence *per se* requires that the plaintiff must be a member of the class of persons the statute or regulation was intended to protect. Here again, the Act provides the answer to the question: "It is further the intent of the legislature that the [S]tate of Idaho, by adopting this chapter, reaffirms its primacy over *underground facility damage prevention*

*programs that protect the health, safety and property of its citizens . . . .*" I.C. § 55-2201 (italics added). "An underground facility owner who provides any utility service or commodity via a service lateral [the City] shall locate and mark the service lateral in accordance with the provisions of subsection (2) of this section." I.C. § 55-2205(3). Not only is it clear that Yellowstone is a member of the class or persons the statute is intended to protect, but it is also apparent that the duty to mark the underground facility with "reasonable accuracy" falls upon the underground facility owner, the City. In addition, Idaho Code section 55-2205(3) absolves Yellowstone of any responsibility to locate its sewer lateral. The statute provides: "An end user [such as Yellowstone] shall not be required to locate or mark any service lateral." *Id.* The Act places obligations on the City to do certain things regarding the location and marking of underground facilities and relieves Yellowstone from doing the same. Because of this, the third element of negligence *per se* has been met.

The final question is whether a violation was the proximate cause of Yellowstone's injury. The determination of proximate cause is ordinarily a question for the jury. Considering the four factors involving establishment of negligence *per se*, they either have been established, or there are genuine issues of material fact that must be resolved by a jury in order to determine whether the City is liable to Yellowstone for negligence *per se*. Accordingly, we hold the district court erred in concluding Yellowstone's claim of negligence *per se* should be resolved against Yellowstone at summary judgment.

2. *Negligence*

Yellowstone also argues the district court erred in failing to address its common law negligence claim. Although the district court did not fully analyze Yellowstone's common law negligence claim, it did summarily hold that Yellowstone had failed to point to any "recognized preexisting duty the City owed" when it concluded that Yellowstone lacked standing to bring a claim under Idaho Code section 55-2205(2). The district court's holding denying the existence of any preexisting duty, which would encompass Yellowstone's common law negligence claim against the City, means that this issue has been sufficiently preserved for review on appeal.

Yellowstone claims that the City has a common law duty to protect its customers' service line within a public right-of-way. Thus, when the City has been notified digging will occur within a public right-of-way and has been further provided the path and dates of excavation, Yellowstone alleges the City had the common law duty to exercise ordinary care in the management of its

10

property, and because the City did not, it breached the duty it owed Yellowstone under the circumstances. Because the City was on notice of both the future excavation as well as Yellowstone's use of the City's sewer services, Yellowstone argues the City had a duty to take necessary precaution, which it did not take. The City counters that because BorTek, not the City, bored through the service lateral, Yellowstone has not demonstrated that the City "breached any common law duty owed to Yellowstone[.]" Further, because Yellowstone "owned, installed, and maintained" the service lateral, the City contends it has no duty to record the location of the lateral.

> The elements of a common law negligence action are (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage.

*O'Guin v. Bingham County*, 142 Idaho 49, 52, 122 P.3d 308, 311 (2005) (internal quotation marks and citation omitted). Under the common law, the duty owed is that of "a reasonable man[.]" *Id.* (internal quotation marks and citations omitted); *see also negligence*, Black's Law Dictionary (7th ed. 1999) ("The failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation . . . .").

The question of "whether a duty existed . . . is generally a question of law[.]" *Forbush v. Sagecrest Multi Fam. Prop. Owners' Ass'n, Inc.*, 162 Idaho 317, 322, 396 P.3d 1199, 1204 (2017) (internal citation omitted). "However, whether a duty existed becomes a question of fact if it requires resolution of disputed facts." *Id.* (citing *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 401–02, 987 P.2d 300, 313–14 (1999)).

The City argues it had no common law duty to mark the service lateral owned by Yellowstone when "[i]t is undisputed the City of Rigby has absolutely no information regarding the location of Yellowstone's sewer lateral." Yellowstone counters that, as the provider of local sewer services, the City knew or should have known the location of service laterals within public rights-of-way. The service lateral is, after all, connected to the City's sewer system and apparently within the public right-of-way. Yellowstone argues that the City's admission that it did nothing to mark service laterals is not reasonable under the circumstances. Yellowstone alleges that, by failing to take any action that would notify BorTek of the service laterals, the City breached its duty to protect its customers' property and provide continuous service to its customers.

Idaho Jury Instruction 2.20 defines "negligence" as:

[T]he failure to use ordinary care in the management of one's property or person. The words "ordinary care" mean the care a reasonably careful person would use

11

under circumstances similar to those shown by the evidence. Negligence may thus consist of the failure to do something which a reasonably careful person would do, or the doing of something a reasonably careful person would not do, under circumstances similar to those shown by the evidence.

IDJI 2.20.

Yellowstone may have owned the service lateral on its property; however, the location where that service lateral connects to the City's sewer system is in a public-right-of-way owned by the City. The City knew or should have known where Yellowstone's service lateral joined with the City's sewer system when the service lateral was added to the City's sewer system. The City had the common law duty to exercise ordinary care in the management of the public right-of-way and its sewer system. Whether the City breached this duty by failing to maintain records of the location of service laterals, failing to adequately mark service laterals, or failing to take other precautions to protect customers' service laterals within the public right of way and which were attached to the City's sewer systems are questions that need to be resolved by a jury. Accordingly, we hold the district court erred in concluding the City owed Yellowstone no duty under the common law. The City owed Yellowstone the duty to act as a reasonable manager of its property under the circumstances. Whether the City did so is a question of fact for a jury to decide.

*3. Discretionary function immunity*

The district court additionally concluded the City's inability to locate the service lateral qualified as a discretionary function, which would entitle the City to statutory immunity. Idaho Code section 6-904—the statute creating discretionary function immunity for a governmental entity—provides that such an entity:

[S]hall not be liable for any claim which:

1. Arises out of any act or omission of an employee of *the governmental entity exercising ordinary care*, in reliance upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

I.C. § 6-904(1) (italics added). Whether the City's conduct falls within the purview of the discretionary function exception to the Idaho Tort Claims Act is dependent on the extent and nature of the City's duty, if any is found to exist.

We have interpreted this section of the Idaho Tort Claims Act as follows:

12

> In *Jones v. City of St. Maries*, Justice Huntley noted that the first clause of I.C. § 6-904(1) affords governmental employees immunity if they act with ordinary care and in accordance with policy decisions. 111 Idaho 733, 745, 727 P.2d 1161, 1173 (1986) (Huntley, J., concurring). However, if a governmental employee fails to exercise ordinary care while carrying out the government's policy, then this exception would not afford immunity.

*Rees v. State, Dep't of Health & Welfare*, 143 Idaho 10, 20, 137 P.3d 397, 407 (2006). As described above, there remain questions of fact as to whether the City breached a duty owed to Yellowstone. Without a determination on whether the City breached a duty owed to Yellowstone, we cannot determine whether the City is entitled to discretionary function immunity. Accordingly, we reverse the district court's decision granting summary judgment to the City on the issue of discretionary function immunity.

## C. The City's cross-appeal concerning the district court's refusal to grant attorney fees is moot.

The City cross-appealed the district court's decision denying it attorney fees below. However, because we have concluded that the district court erred in granting summary judgment to the City and reversed that decision, the City's cross-appeal has been rendered moot.

## D. Neither party is entitled to attorney fees on appeal.

Both parties request attorney fees and costs on appeal pursuant to Idaho Code section 55-2211(5), which grants the Court discretion to award attorney fees to the prevailing party for a violation of the Underground Facilities Damage Prevention Act. We conclude neither party is entitled to attorney fees because neither party has ultimately prevailed on appeal. Although Yellowstone was successful in having this Court reverse the district court's grant of summary judgment to the City, Yellowstone also appealed the district court's denial of summary judgment to Yellowstone. We decline to reverse the district court's denial of Yellowstone's motion for summary judgment. Because questions of fact remain, it has yet to be decided whether the City has violated Idaho Code section 55-2211(5). As a result, it would be premature to award Yellowstone attorney fees at this juncture.

## I. CONCLUSION

We reverse the district court's grant of summary judgment to the City because there remain genuine issues of material fact to be resolved by the factfinders. We decline to address the City's cross-appeal regarding the district court's refusal to award attorney fees to it because that decision has been rendered moot by our decision. We also deny attorney fees to either party on appeal

because doing so would be premature. Yellowstone is awarded its costs on appeal as a matter of right as the prevailing party.

Chief Justice BEVAN and Justices BRODY, MOELLER, and ZAHN CONCUR.